**Richard PALMER, Plaintiff–Appellant,**

**v.**

**Chuck DIAZ, Diane Herwitz, and Sandra Burrill, Defendants–Appellees.**

**No. 08CA0198.**

Colorado Court of Appeals,
Div. V.

May 14, 2009.

Walberg, Tucker & Holmes, P.C., Wendelyn K. Walberg, Kristin A. Brenner, Englewood, Colorado, for Plaintiff–Appellant.

White and Steele, P.C., Stephen R. Higgins, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge GRAHAM.

Plaintiff, Richard Palmer, a businessman, appeals the judgment and award of damages entered after a jury trial in favor of defendants, Chuck Diaz, Diane Herwitz, and Sandra Burrill, witnesses who provided information about Palmer to federal investigators. Palmer also appeals the trial court's order awarding attorney fees and costs to defendants. We affirm the judgment except as to the award of exemplary damages, reverse the order awarding attorney fees and costs, and remand for further proceedings.

Palmer was a founder, director, and, at different times, corporate vice president, vice president of sales, and chief executive officer of Native American Sales, Incorporated (NAS), which primarily sold computer equipment to the United States government under the Small Business Act of 1958.

Robert Ruthford, who was part Native American, was listed as the owner of NAS. NAS was therefore granted minority status under section 8(a) of the Small Business Act, 15 U.S.C. § 637(a). Defendants all worked for NAS at various times.

In December 1997, after he was no longer employed by NAS, Diaz contacted the Small Business Administration "because he did not want to see NAS take advantage of the 8(a) program." Diaz explained that, although "on paper" Ruthford was "the 96% owner of NAS," Palmer was the "real owner." Thereafter, the Federal Bureau of Investigation, the Internal Revenue Service, and Small Business Administration investigated NAS. Defendants cooperated with the federal government in the investigation of Palmer. Palmer had filed for Chapter 13 bankruptcy protection in 1995 and received a discharge in 1998.

As a result of the investigation, Palmer was indicted in federal district court on ninety-one felony counts of money laundering, bankruptcy fraud, and criminal forfeiture. The indictment did not include charges or allegations related to NAS's minority status under section 8(a) of the SBA. Defendants were potential witnesses for the prosecution at Palmer's trial. Palmer ultimately pleaded guilty in federal district court to one count each of fraudulently concealing property in connection with a bankruptcy proceeding, money laundering, and criminal forfeiture. He was sentenced to the United States Bureau of Prisons for twenty-four months.

After Palmer pleaded guilty, he filed this slander and defamation action against defendants, alleging that defendants made defamatory statements to federal investigators "regarding [his] business practices and personal life," which concerned "the status of [NAS] within the SBA Minority business program 8(a)," and that these false statements led to additional investigations by the FBI and ultimately to Palmer's indictment, plea, and incarceration. Defendants denied that the statements were false and, for affirmative defenses, asserted substantial truth and a qualified privilege to publish the statements. Defendants also filed counterclaims for abuse of process and extreme and outrageous conduct, alleging that Palmer's action was in retaliation for defendants' cooperation with the federal government's criminal investigation of Palmer.

After a trial, the jury returned verdicts in favor of defendants on Palmer's slander claims and defendants' counterclaims for abuse of process and outrageous conduct. In connection with the abuse of process and outrageous conduct claims, the jury found that Palmer engaged in malicious (outrageous) conduct. The jury also determined by special interrogatory that Palmer's claims were brought against defendants as a result of retaliation. The jury awarded each defendant $100,000 in economic damages, $200,000 in noneconomic damages, and $1,500,000 in punitive damages. Palmer's and defendants' post-trial motions were denied.

Thereafter, the trial court awarded attorney fees in the amount of $43,422.38 in favor of defendants and against Palmer pursuant to section 18–8–708, C.R.S.2008, of the Victim and Witness Protection Act and section 13–17–102, C.R.S.2008. This appeal followed.

## I. Sufficiency of the Evidence

■ Palmer argues that the evidence does not support the jury's verdict for defendants on their abuse of process and outrageous conduct claims. We are not persuaded.

■ In determining whether a jury verdict is supported by the evidence, we review the record in the light most favorable to the prevailing party, and every inference fairly deducible from the evidence is drawn in favor of the judgment. Appellate courts are bound by a jury's findings and may not disturb a jury verdict unless it is clearly erroneous. *People in Interest of T.T.*, 128 P.3d 328, 331 (Colo.App.2005).

■ A claim for abuse of process requires a plaintiff to prove the following elements: (1) an ulterior purpose for the use of judicial process; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, that is, use of a legal proceeding in an improper manner; and (3) resulting damage. *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo.2007); *Moore v. W. Forge Corp.*, 192 P.3d 427, 438 (Colo.App. 2007); *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo.App.2006).

■ The elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or

with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress. *Archer v. Farmer Bros. Co.,* 70 P.3d 495, 499 (Colo. App.2002), *aff'd,* 90 P.3d 228 (Colo.2004).

The trial court instructed the jury on these elements without objection. *See* CJI–Civ. 4th 17:10, 23:1 (1998).

In addition, because defendants' claims for abuse of process and outrageous conduct were based on the allegation that Palmer filed this lawsuit solely for retaliatory purposes, the court instructed the jury, without objection, on the definition of "retaliation" as follows:

> An individual commits "retaliation" against a witness if such person uses a threat, act of harassment, or act of harm or injury upon any person or property, which action is directed to or committed upon a witness to any crime with the specific intent to retaliate or to seek retribution against that person because of that person's relationship to a criminal proceeding.

Palmer agrees this instruction tracked the statutory language of section 18–8–706(1), C.R.S.2008.

■ On appeal, Palmer argues that the evidence failed to establish that the act of filing this lawsuit constituted a prohibited, or an unlawful, act of retaliation pursuant to section 18–8–706(1). Palmer's argument regarding the sufficiency of the evidence is intertwined with, and dependent upon, his argument that the instruction defining "retaliation" was erroneous because it failed to instruct the jury that an "act of harm or injury" or an "act of harassment" includes only unlawful and prohibited acts. However, because Palmer did not object to the jury instructions at trial, and in fact agreed to the jury instructions, we decline to address this new argument. *See* C.R.C.P. 51 (stating that the parties must object to jury instructions prior to their submission to the jury, and that "[o]nly the grounds so specified shall be considered on ... appeal or certiorari"); *Bear Valley Church of Christ v. DeBose,* 928 P.2d 1315, 1330–31 (Colo.1996); *J.A. Balistreri Greenhouses v. Roper Corp.,* 767 P.2d 736, 739 (Colo.App.1988).

We conclude that the evidence, when viewed in the light most favorable to defendants, supports the jury's verdict that Palmer used the judicial proceedings for the ulterior purpose of retaliation for defendants' cooperation in the federal investigation. Palmer filed the lawsuit after he entered his guilty plea and was sentenced, but before he began serving his sentence. Palmer alleged in the complaint—which is available to the public—that defendants lied to federal law enforcement authorities. Defendants testified that they believed that this was a "vindictive" lawsuit filed for "retaliatory purposes." The Assistant United States Attorney, who was involved in the investigation and prosecution of Palmer, testified that he was "shocked" Palmer was suing defendants and that he had "never heard of any witnesses getting sued in a manner like this either on any of [his] cases or on any other cases with which [he] was familiar."

The instruction on abuse of process included as an element that the "principal reason for [Palmer]'s action was other than to recover damages but rather to retaliate and intimidate witnesses and cause them damage for cooperation with the Federal government in criminal proceedings that involve [Palmer]." Based on the evidence and inferences therefrom, the jury reasonably could find that Palmer's motivation in filing the lawsuit did not relate to any expectation of recovery referenced in the instruction. In returning a verdict against Palmer, the jury necessarily concluded that Palmer himself was pursuing the claims for ulterior purposes and not because he believed the claims were meritorious. Indeed, the jury found against Palmer on his slander claims.

■ We also reject Palmer's argument that, because the trial court did not direct a verdict in favor of defendants on their outrageous conduct claim, the evidence is somehow insufficient to support the jury's verdict that filing this lawsuit constituted outrageous conduct.

A motion for directed verdict may be granted only where the evidence, considered in the light most favorable to the nonmoving party, compels the conclusion

that reasonable people could not disagree and that no evidence, or legitimate inference from the evidence, has been presented upon which a jury verdict against the moving party could be sustained.

*Langlois v. Bd. of County Comm'rs,* 78 P.3d 1154, 1157 (Colo.App.2003). The trial court's refusal to grant defendants' motion for a directed verdict does not nullify or bar a jury verdict that Palmer engaged in extreme and outrageous conduct. A trial court should tread carefully before deciding to remove the fact finding responsibility from the hands of the jury. *See id.* ("Directed verdicts are not favored."). Palmer has cited no authority, and we have found none, supporting the proposition that a jury verdict finding outrageous conduct cannot be sustained if the trial court denies a motion for directed verdict on that claim. *Cf. Fair v. Red Lion Inn,* 920 P.2d 820, 826 (Colo.App.1995) (on the evidence presented, a factual dispute was present; therefore, the trial court properly declined to grant a directed verdict because the evidence was sufficient to support the jury's finding of liability, which cannot be disturbed on appeal), *aff'd,* 943 P.2d 431 (Colo.1997).

## II. Economic and Noneconomic Damages

■ Palmer contends the evidence was insufficient to support the jury's award of economic and noneconomic damages on defendants' counterclaims and, consequently, the trial court should have granted his motion for a new trial. We disagree.

■ The determination of the amount of damages is within the jury's discretion. "[A]bsent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Higgs v. Dist. Court,* 713 P.2d 840, 860–61 (Colo.1985) (quoting *Hurd v. Am. Hoist & Derrick Co.,* 734 F.2d 495, 503 (10th Cir. 1984)).

■ However, a damage award may not be based on speculation or conjecture. *Logixx Automation, Inc. v. Lawrence Michels Family Trust,* 56 P.3d 1224, 1227 (Colo.App. 2002); *Sonoco Prods. Co. v. Johnson,* 23 P.3d 1287, 1289 (Colo.App.2001); *Wojtowicz v. Greeley Anesthesia Servs., P.C.,* 961 P.2d 520, 522 (Colo.App.1997); *see also Jones v. Cruzan,* 33 P.3d 1262, 1265 (Colo.App.2001) (amount of damages awarded may not be disturbed unless it is completely unsupported by the record).

■ One claiming damages must submit "substantial evidence, which together with reasonable inferences to be drawn therefrom provides a reasonable basis for computation of the damage." *Pomeranz v. McDonald's Corp.,* 843 P.2d 1378, 1383 (Colo.1993).

■ Substantial evidence is that which is probative, credible, and competent. It is evidence of a character that would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradicting testimony or contradictory inferences. Accordingly, if there is no competent evidence to support a damage award, it is clearly erroneous. *Roberts v. Adams,* 47 P.3d 690, 697 (Colo.App.2001).

■■ However, if it is "difficult or even impossible to ascertain such damages with mathematical certainty, the trier of the facts, knowing that greater damages than awarded were suffered, must, by utilizing all the evidence and the reasonable inferences emanating therefrom, devise a fair method for assessing such damages." *Sonoco Prods.,* 23 P.3d at 1289 (quoting *Peterson v. Colo. Potato Flake & Mfg. Co.,* 164 Colo. 304, 310–11, 435 P.2d 237, 240 (1967)). Once the fact of damage has been established with the requisite degree of certainty, uncertainty as to the amount of damages will not bar recovery. *Id.* at 1290.

The jury was instructed, in pertinent part, without objection, as follows:

> Counterclaimant(s) ... have the burden to prove the nature and extent of their damages by a preponderance of the evidence. If you find in favor of any Counterclaimant(s), you must determine the total dollar amount of that Counterclaimant(s)' damages, if any, that were caused by the abuse of process and/or outrageous conduct of Plaintiff....

In determining these damages, you shall consider the following:

1. Any noneconomic losses or injuries the Counterclaimant(s) have had to the present time or that they will probably have in the future, including: any physical pain and suffering, mental anguish, fear, anxiety, humiliation, embarrassment, indignity and public disgrace, and any loss to the Counterclaimant(s)['] reputation which were caused by the abuse of process [and]/or for outrageous conduct.

2. Any economic losses or injuries the Counterclaimant(s) have had to the present time or that they will probably have in the future, including: court costs, reasonable attorney fees and any other reasonable expenses the Counterclaimant(s) have had in defending themselves in any proceeding against Plaintiff ..., a reasonable amount for the time lost in preparing for and in attending this proceeding, loss of income, and damage to any business.

. . . .

The fact that an instruction on measure of damages has been given to you does not mean that the Court is instructing the jury to award or not to award damages. The question of whether or not damages are to be awarded is a question for the jury's consideration.

. . . .

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence.

In addition, the court instructed the jury that it was not to "be influenced by sympathy, bias, or prejudice for or against any party in this case," and absent evidence to the contrary, we presume the jury followed the instructions. *See Garcia v. Mekonnen,* 156 P.3d 1171, 1178 (Colo.App.2006). There is no basis in the record here to conclude the jury was confused or did not follow the court's instructions regarding damages.

Here, defendants testified that, as a result of the "vindictive" and retaliatory lawsuit filed by Palmer, they suffered anxiety, emotional distress, mental anguish, humiliation, and embarrassment. They also testified that they incurred attorney fees of approximately $30,000 before trial (to be split evenly among defendants), travel expenses, and lost income as a result of the litigation.

In addition, Diaz testified that, because the lawsuit was disclosed to a creditor, he had to pay a higher mortgage interest rate on a refinancing loan. He estimated that the higher interest rate will require him to pay about $100,000 to $120,000 more over the life of the loan than if he could have refinanced at the lower interest rate. Diaz also testified that his travel costs were about $250 to $300 and he lost about $500 per day for each day he missed work to attend the trial.

Herwitz testified that, during the pendency of this lawsuit, she tried to refinance, but was turned down for reasons not clear to her. The jury properly could have inferred that she was denied the refinancing loan because of the lawsuit. Herwitz testified that she lost about $190 per day, plus at least three hours of overtime, to attend the trial. Herwitz's husband was disabled, and she was the sole wage earner. She also testified that she developed fibromyalgia in 2000, after the commencement of this lawsuit.

Burrill testified that, before this lawsuit, she intended to sell her house and buy a condominium or townhome at presale pricing. However, because the loan application asked whether she was involved in a lawsuit, she decided not to pursue it. Burrill explained that she would have reduced her mortgage payment and household expenses if she had sold her house in 2005 and bought at presale the condominium or townhome; she expressed concern that she was unsure whether she could sell her house at the time of trial. Her mortgage on her house was about $1,000 per month and she stated that the mortgage payment probably would have been reduced to about $500 per month if she had bought the condominium.

Here, given the three years of litigation defendants have undergone; the court costs and attorney fees defendants have incurred and those they will probably incur in the future; their anxiety, emotional distress, and embarrassment; and their economic losses in credit and interest rates, as well as other

"intangibles" not easily calculated, we do not discern that the jury's economic and noneconomic damages awards were manifestly unjust.

Because we conclude that the damages awarded were not manifestly excessive, a new trial would not be appropriate. *See Belfor USA Group, Inc. v. Rocky Mountain Caulking & Waterproofing, LLC,* 159 P.3d 672, 676 (Colo.App.2006) (a new trial is the proper remedy only if the damages award was manifestly unjust and was the product of bias, prejudice, or passion).

### III. Statutory Cap on Noneconomic Damages

In the alternative, Palmer contends that the $250,000 (adjusted for inflation) noneconomic damages statutory cap in section 13–21–102.5(3)(a), C.R.S.2008, applies to all defendants in the aggregate and not to each defendant individually and, thus, the noneconomic damages awards should be reduced accordingly. We disagree.

A statutory cap limits the amount of damages awarded for noneconomic injuries. § 13–21–102.5, C.R.S.2008; *Goodson v. Am. Std. Ins. Co.,* 89 P.3d 409, 417 (Colo.2004). Section 13–21–102.5(3)(a) states in relevant part:

> In any civil action other than medical malpractice actions in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars, unless the court finds justification by clear and convincing evidence therefor.

In support of his argument, Palmer relies on *Lanahan v. Chi Psi Fraternity,* 175 P.3d 97 (Colo.2008), in which the supreme court held that the noneconomic damages cap in the Wrongful Death Act, section 13–21–203, C.R.S.2008, applies on a per claim basis and not a per defendant basis. The court specifically held that a wrongful death claimant's aggregate recovery for noneconomic damages is limited to a total of $341,250—the amount of the cap adjusted for inflation—from all liable defendants jointly. *Id.* at 103. In other words, a wrongful death claimant cannot recover noneconomic damages of up to $250,000 (adjusted for inflation) from each

liable defendant. Thus, all liable defendants in a wrongful death action share in the statutory cap.

Here, unlike in *Lanahan,* there is not just one claimant and multiple liable parties; rather, there are three claimants (defendants) and just one liable party (Palmer). Therefore, this is not a case like *Lanahan* where one injured claimant seeks to recover noneconomic damages up to the statutory cap from a number of liable parties. It is just the opposite—several claimants, each of whom suffered separate and distinct injuries caused by the same tortious conduct of the same liable party, each seek to recover noneconomic damages up to the statutory cap. Therefore, *Lanahan* is inapposite.

We thus conclude, contrary to Palmer's contention, that the statutory cap set forth in section 13–21–102.5 does not apply to limit a defendant's liability based upon the number of plaintiffs. Otherwise, a defendant could injure many people by the same tortious conduct and in essence receive a "group discount." Such an interpretation of section 13–21–102.5(3)(a) would have absurd consequences. We presume that the General Assembly intended a just and reasonable result and, therefore, we avoid interpretations that lead to an illogical or absurd result. *Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187, 1192 (Colo.1996).

Given the obviously absurd consequences that would result from Palmer's interpretation of section 13–21–102.5(3)(a), we conclude that the trial court properly entered judgment upon the jury's award of noneconomic damages to each defendant in the amount of $200,000.

### IV. Exemplary Damages

Palmer also argues that defendants were not entitled to an award of exemplary damages because his conduct was not attended by circumstances of fraud, malice, or willful and wanton conduct. Alternatively, he argues that the trial court erred in failing to reduce the amount of exemplary damages awarded to each defendant. We disagree with his first argument but agree with the second.

Colorado's exemplary damages statute, section 13–21–102, C.R.S.2008, provides:

(1) (a) In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages. The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.

(b) As used in this section, "willful and wanton conduct" means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff.

. . . .

(3) Notwithstanding the provisions of subsection (1) of this section, the court may increase any award of exemplary damages, to a sum not to exceed three times the amount of actual damages, if it is shown that:

(a) The defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons, during the pendency of the case; or

(b) The defendant has acted in a willful and wanton manner during the pendency of the action in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation.

The jury was instructed:

If you find in favor of any [defendant], and award actual damages on one or more of their claims of abuse of process or outrageous conduct, then you shall consider whether any [defendant] should recover punitive damages against ... Palmer. If you find beyond a "reasonable doubt" that ... Palmer acted in a malicious manner,

you shall determine the amount of punitive damages, if any, that [defendants] should recover. Punitive damages, if awarded, are to punish Mr. Palmer and to serve as an example to others.

The jury specifically found, with record support, that Palmer engaged in malicious conduct. Therefore, pursuant to section 13–21–102, defendants were entitled to an award of exemplary damages, the sum not to exceed the amount of actual damages. Only the trial court, and not the jury, could increase the award of exemplary damages to a sum not to exceed three times the amount of actual damages, if exceptional circumstances were shown.

Each defendant was awarded $300,000 in actual damages ($100,000 in economic damages and $200,000 in noneconomic damages). Thus, pursuant to section 13–21–102, each defendant was entitled to an award of exemplary damages not to exceed $300,000. However, the jury (and not the trial court) awarded each defendant $1,500,000 in exemplary damages. Therefore, this award exceeded the amount of defendants' actual damages in violation of section 13–21–102.

Defendants argue, however, that the jury's exemplary damages awards were proper because section 18–8–708(3), C.R.S.2008, allows an unlimited amount of damages in a retaliation action and, thus, section 13–21–102 is inapplicable. We do not agree.

Section 18–8–708 provides in relevant part:

(1) The following persons are eligible for relief pursuant to this section:

(a) Any person who testifies as a witness or victim in any official proceeding;

(b) Any person who may be called to testify as a witness to or victim of any crime. . . .

(2) Any person who is eligible pursuant to subsection (1) of this section who suffers any physical injury or property damage as the result of the commission of intimidating a witness or victim pursuant to section 18–8–704, aggravated intimidation of a witness or victim pursuant to section 18–8–705, or retaliation against a witness or victim pursuant to section 18–8–706 shall,

in a civil proceeding to recover for such injury or property damage, be eligible for the award of treble damages and attorney fees.

(3) *Nothing in this section shall limit the amount of recovery which a person specified in subsection (1) of this section may receive in a civil proceeding or in any other proceeding.*

(Emphasis added.)

When interpreting a statute, we adopt the construction that best gives effect to the legislative scheme, looking first to the plain language of the statute. *Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 284 (Colo. 2000). Words and phrases shall be read in context and construed according to the rules of grammar and common usage. *See* § 2–4–101, C.R.S.2008; *Holliday v. Bestop, Inc.*, 23 P.3d 700, 705 (Colo.2001). When the statutory language is clear and unambiguous, we interpret the statute as written. *McCall v. Meyers*, 94 P.3d 1271, 1272–73 (Colo.App. 2004). Interpretation of a statute is a question of law that we review de novo. *McIntire v. Trammell Crow, Inc.*, 172 P.3d 977, 979 (Colo.App.2007).

Although section 18–8–708(3) expressly provides that the amount of recovery a person may receive in a civil or other proceeding is not limited by the recovery set forth in section 18–8–708(2) (treble damages and attorney fees), it does not authorize an amount of recovery that exceeds the exemplary damages limitation set forth in section 13–21–102. The statutes at issue in the instant case serve different purposes and can be applied without conflicting with each another. *See US Fax Law Center, Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 518 (Colo.App.2009). The purpose of section 13–21–102 is "to punish the wrongdoer and thus deter similar conduct in the future." *Frick v. Abell*, 198 Colo. 508, 512, 602 P.2d 852, 854 (1979). The purpose of section 18–8–708 is to discourage claims that are brought for the purpose of retaliation or intimidation of a witness or victim. Treble damages under section 18–8–708(2) are statutorily prescribed damages which are unrelated to malicious conduct.

We note that defendants asserted in their post-trial motion that their economic and noneconomic damages should be trebled pursuant to section 18–8–708(2). The motion was deemed denied by operation of law. *See* C.R.C.P. 59(j). However, defendants did not file a cross-appeal of the denial of this motion and do not make this specific assertion on appeal. As a result, we have no occasion to address it. *See People v. Hall*, 87 P.3d 210, 213 (Colo.App.2003) (deeming "abandoned" an argument raised in the trial court but not renewed on appeal).

Therefore, the jury's exemplary damages awards must be reduced so as not to exceed the amount of defendants' actual damages.

## V. Attorney Fees

Palmer contends that the trial court erred in awarding defendants their attorney fees and costs in the amount of $43,422.38. We agree and conclude that the trial court's award of attorney fees and costs is duplicative of the jury's award of damages.

Here, defendants testified and evidence was submitted to the jury estimating the total costs and attorney fees incurred at the time of trial. The jury was instructed that if it found in favor of defendants on the abuse of process or outrageous conduct claims, it should consider in determining economic damages, among other things, "court costs, reasonable attorney fees and any other reasonable expenses [defendants] have had [to the present time or that they will probably have in the future] in defending themselves in any proceeding against [Palmer]." We assume that the jury followed the trial court's instructions. *See Armentrout v. FMC Corp.*, 842 P.2d 175, 187 (Colo.1992). The trial court's additional award of attorney fees and costs was therefore duplicative. *Lexton–Ancira Real Estate Fund v. Heller*, 826 P.2d 819, 823 (Colo.1992) (a plaintiff generally may not receive a double recovery for the same wrong).

Because we are reversing the trial court's duplicative award of attorney fees and costs, we do not address the parties' remaining arguments concerning the trial court's order awarding attorney fees and costs.

The portion of the judgment awarding exemplary damages in excess of $300,000 per

defendant and the trial court's order awarding attorney fees and costs to defendants are reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

Judge BOORAS and Judge NEY * concur.