25CA1127 Arteaga-Torres v Alcazar 06-18-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1127
City and County of Denver District Court No. 24CV31316
Honorable A. Bruce Jones, Judge

---

Alejandra Guadelupe Arteaga-Torres,

Plaintiff-Appellee,

v.

Maria Dolores Alcazar,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Welling and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 18, 2026

---

No Appearance for Plaintiff-Appellee

Donald Martin, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Maria Dolores Alcazar, appeals the judgment entered in favor of plaintiff, Alejandra Guadelupe Arteaga-Torres, following the entry of default and a hearing on damages.  We affirm.

## I.     Background

¶ 2     Arteaga-Torres and Alcazar were coworkers for about a year.  One day, they both went to the supply closet to retrieve supplies at the same time.  After their encounter, Alcazar reported that Arteaga-Torres had assaulted her by slamming the door on her and striking her in the back.  Arteaga-Torres denied that allegation.

¶ 3     Alcazar sought a civil protection order and a temporary protection order (TPO) against Arteaga-Torres in a separate case.  A court granted the TPO, which caused Arteaga-Torres to be temporarily out of work and required her to move to different job locations because she could not be at her workplace.  The court later denied Alcazar's request for a permanent protection order.

¶ 4     After the protection order proceedings, Arteaga-Torres initiated this lawsuit, asserting claims against Alcazar for malicious prosecution and abuse of process.  Alcazar filed an answer and counterclaims, Arteaga-Torres answered, and trial was set.

¶ 5     And then Alcazar stopped participating in the lawsuit for eight months. On July 18, 2024, a month and a half after the case was at issue, Arteaga-Torres filed a status report informing the court that Alcazar had not served her initial disclosures, and her counsel had not responded to a phone call and email to confer about this and other issues. Alcazar did not respond to the status report.

¶ 6     On August 6, Arteaga-Torres filed a C.R.C.P. 16.1(h) certificate of compliance. In the certificate, Arteaga-Torres's counsel represented that she had attempted to contact Alcazar's counsel to confer as required by the rules but that Alcazar's counsel had not responded. The certificate also reiterated that Alcazar had not provided her initial disclosures. Again, Alcazar did not respond.

¶ 7     On September 17, Arteaga-Torres moved for an order requiring Alcazar to show cause as to (1) "why [her] counsel's communication attempts ha[d] been ignored" and (2) why Alcazar had not provided her initial disclosures. The motion explained that, on September 4, after receiving no response to her prior communications, Arteaga-Torres's counsel sent Alcazar's counsel a letter via email and certified mail regarding the lack of communication and lack of

2

initial disclosures and requesting an immediate response. Although the certified letter was delivered, Alcazar's counsel did not respond.

¶ 8 The next day, the court granted Arteaga-Torres's motion and issued the order to show cause. The order required Alcazar to respond within fourteen days. Still, Alcazar did not respond.

¶ 9 On October 4, the district court issued an order directing Arteaga-Torres to file a motion for clerk's entry of default within fourteen days. The order explained as follows:

> After answering the complaint, [Alcazar] has made no further efforts to defend this matter or comply with her discovery and disclosure obligations under the Colorado Rules of Civil Procedure. This, despite multiple attempts by [Arteaga-Torres] and the Court urging [Alcazar] to do so. Accordingly, the Court finds that [Alcazar] has failed to defend or further prosecute her position in this matter.

¶ 10 On October 15, Arteaga-Torres filed her motion for clerk's default. In it, she reiterated the procedural history of the case, including Alcazar's failure to serve her initial disclosures or respond to Arteaga-Torres. Alcazar did not respond to the motion.

¶ 11 Three weeks later, still with no response, the district court granted the motion and entered a clerk's default against Alcazar.

¶ 12    But Arteaga-Torres did not then move for default judgment. So on December 5, the district court issued an order to show cause — this time to Arteaga-Torres — as to why the case should not be dismissed. Despite an extension of time, Arteaga-Torres did not respond to the show cause order, and the court dismissed the case on January 22, 2025. The next day, Arteaga-Torres moved to set aside the dismissal on the ground that her counsel believed she had responded. Arteaga-Torres also filed a motion for entry of default judgment. The court granted the motion, set aside the dismissal, and accepted the motion for default judgment.

¶ 13    On February 15, 2025, Alcazar reappeared for the first time in more than eight months, filing a motion to set aside the default. Alcazar argued that the default should be set aside based on excusable neglect because her counsel (1) thought he had served the initial disclosures; (2) had moved offices; and (3) did not move to set aside the default earlier because of the order to show cause to Arteaga-Torres and the pending dismissal of the case. Alcazar served her initial disclosures the same day she filed her motion.

¶ 14    The district court held a hearing on the motion to set aside the default. At the hearing, Alcazar's counsel acknowledged that he

"did disappear for a while." He attributed his absence to a recent hospitalization, his office move, his loss of paralegals, and his unawareness that the initial disclosures had not been provided.

¶ 15     The district court denied the motion. It first noted that counsel's health issues had not been raised in the motion to set aside the default. It then explained that neither counsel's belief that the disclosures had been made nor his office move was an adequate basis for setting aside the default. The court elaborated:

> Paralegals aren't responsible for maintaining a case, the lawyer is. Even if Counsel believe[d] the disclosures had been made, that does not explain the failure to respond to numerous court orders issued in this case by the Court. . . . The best I can tell, Counsel went for months without reviewing the orders that were issued.

> To reinstate this case back to where it was previously would be prejudicial to [Arteaga-Torres] who despite several missteps in complying with the Court's orders, has at least attempted to do so.

¶ 16     The district court then held a hearing on damages. Arteaga-Torres requested $5,000 in legal expenses related to the protection order proceedings and $50,000 in damages for the "pain, suffering frustration, inconvenience, anxiety, mental and emotional distress"

resulting from Alcazar's allegation against her.  At the hearing, Arteaga-Torres testified that she paid Colorado Legal Defense Group $5,000 to represent her at the two protection order proceedings. She also testified that the TPO "tarnished a lot of [her] professional relationships" and caused her stress that manifested as physical symptoms, including loss of sleep, difficulty eating, and headaches.

¶ 17     After the hearing, the district court awarded Arteaga-Torres $25,000 in damages — $5,000 for the legal fees and $20,000 in noneconomic damages.  It entered judgment for Arteaga-Torres and against Alcazar in that amount, plus prejudgment interest.

## II.     Motion to Set Aside Default

¶ 18     Alcazar argues that the district court erred by denying her motion to set aside the entry of default because (1) she established excusable neglect, and (2) it was unfair for the court to deny her motion while granting Arteaga-Torres's motion to set aside the dismissal.  We conclude the court did not abuse its discretion.

### A.     Applicable Law and Standard of Review

¶ 19     The standard for setting aside an entry of default based on excusable neglect is the same as the standard for setting aside a default judgment under C.R.C.P. 60(b).  *Buckmiller v. Safeway*

*Stores, Inc.*, 727 P.2d 1112, 1116 (Colo. 1986). In determining whether to set aside a default based on excusable neglect, the court must consider (1) whether the neglect that resulted in the entry of default was excusable; (2) whether the moving party has alleged a meritorious claim or defense; and (3) whether relief from the challenged order would be consistent with considerations of equity. *Id.* The court may deny a motion to set aside a default if the movant fails to satisfy any one of these three criteria.[1] *Id.*

¶ 20    Neglect is excusable when the circumstances would "cause a reasonably careful person similarly to neglect a duty." *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 319 (Colo. 2010) (citation omitted). "Common carelessness and negligence do not amount to excusable neglect." *Id.* (citation omitted).

¶ 21    We review the denial of a motion to set aside an entry of default for an abuse of discretion. *Singh v. Mortensun*, 30 P.3d 853, 856 (Colo. App. 2001). A district court abuses its discretion only when its decision is manifestly arbitrary, unreasonable, or unfair. *McMichael v. Encompass PAHS Rehab. Hosp., LLC*, 2023 CO 2, ¶ 10.

---

[1] Alcazar does not argue, and did not argue in the district court, that she had a meritorious defense to Arteaga-Torres's claims.

## B.    Analysis

¶ 22    The district court did not abuse its discretion by finding that Alcazar's failure to participate in the case for eight months was not attributable to excusable neglect.  The only explanations Alcazar's counsel gave in the motion to set aside the default were that (1) he believed the initial disclosures had been served, and (2) he had moved offices.  At the hearing, he added that (3) he had been recently hospitalized due to medical issues "over the past number of months," and (4) he had lost his paralegals.  None of these reasons excuses Alcazar's counsel's monthslong absence from the case.

¶ 23    First, even accepting counsel's assertion that he initially believed the initial disclosures had been served, that would not explain his failure to respond to Arteaga-Torres's counsel's notice that they had not been.  Nor would it explain his failure to respond to such repeated notices for nearly five months before the default was entered.  During that time, Arteaga-Torres's counsel raised Alcazar's failure to provide initial disclosures in (1) a voicemail and email on June 27; (2) a status report on July 18; (3) a certificate of compliance on August 6; (4) a letter sent via email and certified mail on September 4; (5) a motion to show cause on September 17; and

8

(6) a motion for clerk's default on October 15. The district court also cited that failure in its September 18 order to show cause and its October 4 order to file a motion for clerk's default. Thus, if Alcazar's counsel thought the initial disclosures had been served, he had ample time and opportunity to realize they had not been.

¶ 24 Second, Alcazar's counsel could not justifiably blame his eight-month neglect of the case on an office move or staff turnover. "[T]he press of work or other activities of an attorney do not constitute excusable neglect . . . ." *People in Interest of L.B-H-P.*, 2021 COA 5, ¶ 20 (citation omitted); *see also Goodman Assocs.*, 222 P.3d at 322 (holding that "carelessness and neglect due to poor office procedures" are not excusable neglect). Nor may an attorney "excuse errors in matters or pleadings for which he is responsible" by blaming staff. *Riggs Oil & Gas Corp. v. Jonah Energy LLC*, 2024 COA 57, ¶ 64 (citation omitted). In any event, neither an office move nor a change in staff at some point during the case can excuse Alcazar's counsel's disregard of the case for months. *See id.*

¶ 25 Third, while an attorney's health issues may be grounds to set aside a default when they were a "significant contributing cause for the default," the record does not support that in this case. *In re*

*Weisbard*, 25 P.3d 24, 28 (Colo. 2001). Alcazar's counsel explained that the hospitalization was a recent issue at the time of the hearing four months after default was entered, and there is no indication in the record that counsel's ongoing medical issues were a "significant contributing cause for the default." *Id.* Indeed, Alcazar did not mention her counsel's health issues in her motion to set aside.

¶ 26 Moreover, the district court found that, by the time Alcazar moved to set aside the default, Arteaga-Torres would be prejudiced if the motion were granted. *See Singh*, 30 P.3d at 856 (listing prejudice to the plaintiff, among other equitable considerations, as a relevant factor in determining whether to set aside a default). As Alcazar was ignoring the case, Arteaga-Torres was attempting to keep the case on track and comply with the court's orders — all without even the most basic cooperation from Alcazar. Then, when default was entered, Alcazar waited another three months before

moving to set it aside.[2] *Cf. Goodman Assocs.*, 222 P.3d at 322 (noting that two-month delay between learning of default judgment and filing motion to set aside cut against excusable neglect). Setting aside the default at that point would effectively have restarted the case nearly a year after Arteaga-Torres had filed it.

¶ 27   Alcazar does not seriously contest any of this on appeal. Instead, she asserts that it was unfair for the district court to deny her motion to set aside the default while granting Arteaga-Torres's motion to set aside the dismissal on similar grounds — namely, that her counsel mistakenly believed she had filed a response. We are not persuaded. The court's ruling on Arteaga-Torres's motion to set aside the dismissal has nothing to do with whether the court abused its discretion by denying Alcazar's motion to set aside the default. But even if it did, the circumstances were not the same.

---

[2] Alcazar asserts that she did not file the motion to set aside the default sooner because the court was "deciding whether to dismiss the case completely." But the show cause order was not issued until a month after default was entered. And the case was only dismissed for one day before it was reinstated. Needless to say, if Alcazar purposely waited three months to file a motion to set aside the default because of the possibility that Arteaga-Torres would not respond to the show cause order and the case would be dismissed, that was a risky move that does not amount to excusable neglect.

¶ 28    Arteaga-Torres actively litigated the case until default was entered. When the district court issued its order to show cause, she timely moved for an extension of time to respond, which the court granted. Then, when she missed the deadline one month later and the court issued the order of dismissal, she filed a motion to set aside the judgment *the next day*, along with the required motion for default judgment that she believed she had filed sooner. That is a far cry from Alcazar's counsel's failure to take any action in the case — or even communicate with Arteaga-Torres's counsel — for more than eight months and his delay of more than three months in moving to set aside the default. The district court could reasonably treat these different circumstances differently.[3]

### III.    Entry of Default

¶ 29    Alcazar also argues that the entry of default was too drastic a sanction for what she characterizes as a single untimely filing of an initial disclosure. As discussed above, Alcazar's neglect of the case

---

[3] To the extent Alcazar asserts that the district court violated the Colorado Code of Judicial Conduct by showing partiality, there is nothing in the record that would support such an accusation. *See People in Interest of A.P.*, 2022 CO 24, ¶ 32 ("[A]dverse legal rulings by a judge are unlikely to provide grounds for a bias claim . . . .").

went far beyond a mere untimely initial disclosure. But more to the point, Alcazar did not challenge the default on this ground in the district court. The only grounds she asserted for setting aside the default were excusable neglect and the purported similarities to Arteaga-Torres's motion to set aside the dismissal. We will not consider challenges to a default order that were not raised in the district court. *See Gestner v. Gestner*, 2024 COA 55, ¶ 27.

## IV. Damages

¶ 30      Finally, Alcazar appeals the damages award, arguing that there was insufficient evidence to support it. She contends that the award of $20,000 in noneconomic damages was excessive given the lack of any physical injury or medical treatment.[4] We disagree.

¶ 31      We review the amount of damages awarded by the district court for clear error. *Sos v. Roaring Fork Transp. Auth.*, 2017 COA 142, ¶ 35. Under this standard, "[w]e will not disturb an award of

---

[4] Although Alcazar asserts that any damages beyond nominal damages were improper, she does not directly challenge the $5,000 in attorney fees Arteaga-Torres incurred in the protection order case. *See Tech. Comput. Servs., Inc. v. Buckley*, 844 P.2d 1249, 1256 (Colo. App. 1992) ("[I]n an action for malicious prosecution or abuse of process, a plaintiff may recover attorney fees incurred in defending against the earlier wrongful litigation by the defendant.").

13

damages unless it is completely unsupported by the record." *Averyt v. Wal-Mart Stores, Inc.*, 265 P.3d 456, 462 (Colo. 2011). In making this determination, "we view the record in the light most favorable to the prevailing party and draw every inference deducible from the evidence in favor of that party." *Id.* Noneconomic damages may include "pain and suffering, inconvenience, emotional stress, and impairment of the quality of life." § 13-21-102.5(2)(b), C.R.S. 2025.

¶ 32 Viewing the record in the light most favorable to Arteaga-Torres, we cannot conclude that the district court's award of $20,000 in noneconomic damages is clearly erroneous. The district court found that, as a result of defending the protection order proceedings, Arteaga-Torres suffered stress, loss of sleep, and headaches; she was unable to eat; and her work relationships were negatively affected. It then found that $20,000 was an appropriate amount to compensate her for these noneconomic injuries. *See Palmer v. Diaz*, 214 P.3d 546, 553-54 (Colo. App. 2009) (affirming noneconomic damages award for "anxiety, emotional distress, and embarrassment" caused by "vindictive" and "retaliatory" lawsuit).

¶ 33 The record supports the district court's findings. Arteaga-Torres testified that the protection order lawsuit forced her to leave

14

work during the pendency of the case and "tarnished a lot of [her] professional relationships." She also testified that, as a result of the case, she "would wake up with headaches," "was sleeping like one or two hours a night," and "[c]ouldn't really eat." By the time of the damages hearing more than a year after the protection order case had ended, Arteaga-Torres had "lost over fifty pounds" and was still experiencing stress as a result of the case. When asked to put a dollar figure on the amount of stress she had suffered as a result of the protection order case, she estimated it to be $20,000.

¶ 34    Alcazar argues that $20,000 is excessive because Arteaga-Torres did not seek medical treatment or take medication for her stress. But as the district court noted, such treatment is not a prerequisite for recovery of noneconomic damages, which are intended to compensate a plaintiff for *nonpecuniary* harm. *See* § 13-21-102.5(2)(b). Given the significant distress that Arteaga-Torres described, the award of $20,000 in damages to compensate her was not "manifestly excessive." *Palmer*, 214 P.3d at 554.[5]

---

[5] Indeed, Arteaga-Torres initially requested $50,000 in noneconomic damages, which the district court said it likely would have found excessive. Thus, the court's award of $20,000 shows that it exercised its discretion in determining the appropriate amount.

## V.    Disposition

¶ 35    The judgment is affirmed.

JUDGE WELLING and JUDGE LUM concur.