Robert L. **BUCKHANNON,**
Plaintiff–Appellant,

v.

**U.S. WEST COMMUNICATIONS, INC.,** a Colorado corporation, Defendant–Appellee.

No. 94CA1287.

Colorado Court of Appeals,
Div. A.

March 21, 1996.

As Modified on Denial of Rehearing
May 30, 1996.

Certiorari Denied Nov. 18, 1996.

Randal R. Kelly, Denver, for Plaintiff–Appellant.

Faegre & Benson, Michael S. McCarthy, Charlotte Wiessner, Natalie Hanlon–Leh, Denver, U.S. West Communications, Inc., H. Perry Ryon, Denver, for Defendant–Appellee.

Opinion by Chief Judge STERNBERG.

Plaintiff, Robert L. Buckhannon, appeals a summary judgment entered in favor of defendant, U.S. West Communications, Inc., dismissing his claims for intentional interference with contract, malicious prosecution, and abuse of process. We affirm the trial court's dismissal of the intentional interference with contract claim, but reverse its dismissal of plaintiff's claims for malicious prosecution and abuse of process, and remand those claims for further proceedings.

I.

While Buckhannon was riding a bicycle in March of 1990, a U.S. West truck swerved into his path. Although he was not struck by the vehicle, Buckhannon claims to have injured his shoulder and knee in avoiding a collision. Buckhannon then filed a claim with U.S. West, who was self-insured, for no-fault (PIP) benefits and also filed a claim for benefits with his disability insurance carrier, Monarch Life Insurance Company.

When U.S. West refused to pay the PIP benefits, the matter went before an arbitration panel in March of 1991. Buckhannon testified at the hearing as to the circumstances of the incident and his alleged injuries. His then girlfriend who had witnessed the incident corroborated his testimony. The panel found in favor of Buckhannon, awarding unpaid treatment expenses, treble damages, interest, and attorney fees.

In January of 1991, prior to the PIP arbitration, Buckhannon, a chiropractor, filed a personal injury suit against U.S. West and the truck driver, claiming that his injuries had caused his total and permanent disability in his profession, in that he was no longer able to perform manipulation treatments to the extent that he had prior to his injuries.

As part of its trial preparation, U.S. West took the deposition of Buckhannon's former girlfriend. She recanted the majority of the testimony she had given at the PIP arbitration and stated that Buckhannon's injuries were preexisting. Shortly thereafter, Buckhannon's personal injury suit was voluntarily dismissed with prejudice.

Prior to the dismissal, an investigator employed by U.S. West's in-house counsel contacted Monarch to inquire into the disability payments being made to Buckhannon. The investigator allegedly informed Monarch that Buckhannon was not disabled, had filed fraudulent tax returns, had accepted kickbacks, had committed billing fraud in his practice, and questioned why Monarch was still paying benefits to Buckhannon. Monarch thereafter ceased the disability payments pending investigation of these issues.

Monarch sued Buckhannon in September 1992, seeking a declaratory judgment and rescission of the insurance policy; Buckhan-

non filed his own suit against Monarch for breach of duty of good faith, breach of contract, and other claims. The cases were consolidated, and Monarch and Buckhannon subsequently entered into a confidential settlement.

Based on the recanted testimony of Buckhannon's former girlfriend and the voluntary dismissal of his personal injury claims, U.S. West sought sanctions against Buckhannon in June of 1992, claiming that his lawsuit against the company was substantially frivolous, groundless, and vexatious. This claim proceeded to arbitration, Buckhannon prevailed, and no sanctions were awarded.

Shortly before commencement of the sanctions arbitration, Buckhannon filed this suit based upon U.S. West's remarks and allegations about him in its contacts with Monarch. Buckhannon asserted claims for tortious interference with contractual relations, libel and slander per se, libel and slander per quod, and intentional infliction of emotional distress. After the arbitrator denied U.S. West's claim for sanctions, Buckhannon added claims for relief for extreme and outrageous conduct, abuse of process, malicious prosecution, and civil conspiracy. U.S. West moved for summary judgment.

The trial court granted summary judgment for U.S. West on Buckhannon's libel and slander claims and his claims for extreme and outrageous conduct and tortious interference with contractual relations. Additionally, the court found that Buckhannon was collaterally estopped from asserting his claims for malicious prosecution and abuse of process, based on one of the factual determinations made by the arbitrator in the sanctions arbitration. Finally, the trial court dismissed the civil conspiracy claim because of its dependency on the survival of the underlying claims.

Buckhannon does not appeal any issues relating to the dismissal of his claims for libel and slander, intentional infliction of emotional distress, extreme and outrageous conduct, and civil conspiracy. Thus, the remaining issues to be determined in this appeal are those which relate to his claims for intentional interference with contractual relations, malicious prosecution, and abuse of process. *See Worley v. Sancetta*, 540 P.2d 355 (Colo.App.1975) (not selected for official publication) (issues not presented or argued on appeal are abandoned).

## II.

Summary judgment is proper only if the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Persichini v. Brad Ragan, Inc.*, 735 P.2d 168 (Colo.1987). Applying that standard here, we agree with the trial court that Buckhannon's claim of intentional interference with contractual relations was insufficient to survive U.S. West's motion for summary judgment.

Buckhannon asserts that U.S. West intentionally interfered with his contractual relations with Monarch when employees in U.S. West's legal department made defamatory statements to Monarch's claims personnel during U.S. West's preparation for the personal injury suit. He argues that U.S. West deliberately tried to undermine his receipt of disability benefits by telling Monarch he was guilty of fraud and that U.S. West's comments were designed to instigate legal action between Buckhannon and Monarch. Except for his allegations of malicious prosecution and abuse of process, all of Buckhannon's claims in this case stemmed from the same conduct on the part of U.S. West: telling Monarch that his claim was fraudulent.

■ However, as noted by the trial court, the statements to Monarch concerning Buckhannon were communications preliminary to a proposed judicial proceeding, were related to the proceeding, and were thus absolutely privileged. We agree with this conclusion, and agree with the trial court that application of this privilege entitled U.S. West to dismissal of the intentional interference claim.

■ In *Club Valencia Homeowners Ass'n v. Valencia Associates*, 712 P.2d 1024 (Colo.

App.1985), a division of this court addressed this issue and concluded that attorneys are absolutely privileged to make defamatory remarks during preparation for a judicial proceeding so long as the remarks have some relation to the proceeding.

Although Buckhannon does not dispute application of the defense of absolute privilege to his prior defamation claims, he does argue that the absolute privilege does not apply to his intentional interference with contractual relations claim. In his view, U.S. West's allegations of "fraud, immorality and criminal conduct" do not fall under the umbrella of permissible communications. He argues that the statements were unsolicited and constituted a literal invitation for Monarch to commence an investigation of Buckhannon, and were not made for the purpose of investigating its own case with Buckhannon. We disagree.

Because his personal injury suit against U.S. West was based on allegations of occupational disability resulting from the bicycle incident, issues concerning Buckhannon's truthfulness and character did have "some relation" to the proceeding, and were made in the course of U.S. West's preparation for trial. *Club Valencia Homeowners Ass'n, supra.* Thus, we agree that the attorney absolute privilege applies to U.S. West's statements that might otherwise be considered defamatory.

■ The privilege not only shields attorneys from defamation claims arising from statements made during the course of litigation, but it also bars other non-defamation claims that stem from the same conduct. *Barker v. Huang,* 610 A.2d 1341 (Del.1992) (absolute privilege extended to plaintiff's claims of invasion of privacy and intentional infliction of emotional distress); *Western Technologies, Inc. v. Sverdrup & Parcel, Inc.,* 154 Ariz. 1, 739 P.2d 1318 (App.1986) (absolute privilege extended to plaintiff's claim for intentional interference with a contractual relationship).

However labeled, Buckhannon's claim is that U.S. West intentionally made derogatorily false statements about him, and that he was harmed by them. To the extent that such statements were made in the course of judicial proceedings, they are privileged regardless of the tort theory Buckhannon seeks to invoke. Thus, we conclude that the trial court properly dismissed Buckhannon's claim for intentional interference with contractual relations.

### III.

However, we do agree with Buckhannon that the trial court erred in ruling he was collaterally estopped from making claims against U.S. West for malicious prosecution and abuse of process.

After Buckhannon dismissed his personal injury suit against U.S. West, the company moved for sanctions pursuant to § 13–17–101, C.R.S. (1987 Repl.Vol. 6A) and C.R.C.P. 11, claiming that the suit lacked substantial justification. The trial court ordered the parties to submit the sanctions dispute to arbitration. The specific issue to be decided by the arbitrator was whether Buckhannon's suit against U.S. West was substantially frivolous, groundless, or vexatious.

During the course of the arbitration proceedings, Buckhannon asserted that the reason U.S. West filed the motion for sanctions was to seek retribution against him for succeeding in the earlier PIP arbitration, and that the company was attempting to get a "second bite at the apple" by "retrying" its position that Buckhannon was not actually hurt in the bicycle incident.

The arbitrator ruled against U.S. West on its claim for sanctions, but also noted that "despite the protests of [Buckhannon], the evidence offered in this proceeding does not indicate that [U.S. West], in turn, has acted without substantial justification or in bad faith in pursuing sanctions." U.S. West argues on appeal that, because of this factual finding by the arbitrator, Buckhannon is collaterally estopped from litigating this issue in his present claims for malicious prosecution and abuse of process.

**1336**

■ U.S. West contends that all elements for issue preclusion are present. Citing *Industrial Commission v. Moffat County School District RE No. 1*, 732 P.2d 616 (Colo. 1987), it asserts: (1) the issue is identical to an issue actually decided at a prior proceeding; (2) the party against whom estoppel is asserted is a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. However, U.S. West's enumeration of the elements for issue preclusion is incomplete. In *Moffat County School District, supra*, 732 P.2d at 619, the supreme court held that for relitigation of an issue to be barred, the issue precluded must be "identical to an issue actually litigated *and necessarily adjudicated* in the prior proceeding." (emphasis added)

■ Furthermore, relying on the Restatement (Second) of Judgments § 27 comment h (1982), the supreme court held in *Maryland Casualty Co. v. Messina*, 874 P.2d 1058, 1062 (Colo.1994), that "if issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta . . . ."

■ Here, in order to reach a decision on U.S. West's sanctions claims against Buckhannon, the arbitrator was not required to determine whether U.S. West acted in bad faith in asserting those claims. The only *necessary* determination made by the arbitrator was that Buckhannon's earlier tort claims had not been substantially frivolous, groundless, or vexatious. Hence, any other determinations that the arbitrator made in the proceeding have the effect of dicta and, therefore, are not issue preclusive.

U.S. West further argues, however, that the original scope of the arbitration was expanded to include the bad faith issue, alleging that Buckhannon inserted it into the proceedings as part of his defense to the sanctions claim. We disagree.

■ It is true, as U.S. West urges, that parties may agree to expand an original arbitration proceeding. *Leahy v. Guaranty National Insurance Co.*, 907 P.2d 697 (Colo. App.1995) (parties may agree to submit to arbitration other matters in dispute between them). Contrary to the company's assertion that *Leahy* is dispositive, we find it distinguishable from this case and reach a different result.

First, only one issue was submitted for arbitration: what liability, if any, did Buckhannon have for sanctions pursuant to C.R.S. § 13–17–101 and Rule 11, C.R.C.P. in connection with Buckhannon's tort suit against U.S. West. Neither party submitted for arbitration the addition issue of whether U.S. West's sanctions claims were made in bad faith.

Second, there is no evidence in the record indicating that the parties agreed to expand the scope of the arbitration by submitting this issue for resolution. U.S. West contends that Buckhannon raised the issue by "repeatedly interject[ing] the alleged bad faith of U.S. West into the arbitration proceeding through argument and the testimony of . . . through argument and the testimony of his own witnesses." The only specific statement in the record which alleges U.S. West bad faith in seeking sanctions against Buckhannon appears in counsel's opening statement:

> But for trying to vindictively pound some guy into the dirt because they got whipped by him once, we wouldn't be here, Buckhannon wouldn't need to have all these cases an wouldn't need to be spending money that he doesn't have anymore.

At no time did either party request that the arbitrator address the issue of whether U.S. West's sanctions claims were asserted in bad faith. Furthermore, no witnesses gave testimony on the issue. Although perhaps a reflection of Buckhannon's attitude toward U.S. West, in our view these statements do not suffice to expand the issues to be determined by the arbitrator.

We also find that the fourth element required for application of collateral estoppel is lacking here. Buckhannon did not have a full and fair opportunity to litigate the possibility of bad faith on the part of U.S. West because that was not the issue before the arbitrator.

Hence, Buckhannon's claims for abuse of process and malicious prosecution are not barred by the doctrine of collateral estoppel. U.S. West, nevertheless, contends that Buckhannon's claims are precluded because he "consented" to U.S. West bringing the motion for sanctions as part of his voluntary dismissal of the personal injury suit. In the stipulated motion for dismissal, the defendants reserved any issues relating to § 13–17–101 and C.R.C.P. 11 that might be presented to the court upon proper motion and pleading. However, this reservation was not enough to constitute a waiver on Buckhannon's part as to any future claim against U.S. West based on bad faith.

The trial court would have retained jurisdiction over a motion for sanctions by U.S. West even if the reservation had not been included in the dismissal, because such jurisdiction is incorporated by statute in § 13–17–101. Accordingly, including the reservation was not essential to U.S. West's later motion for sanctions; thus, there was nothing requiring Buckhannon's "consent." The presence of the clause in the dismissal has no effect on Buckhannon's current position that the sanctions were sought in bad faith.

### IV.

Finally, citing *Miller v. First National Bank of Englewood,* 156 Colo. 358, 399 P.2d 99 (Colo.1965), Buckhannon contends that the trial court erred in denying his request to conduct discovery prior to its grant of summary judgment. Further, citing *Wolther v. Schaarschmidt,* 738 P.2d 25 (Colo.App.1986), Buckhannon also argues that because U.S. West committed intentional torts against him, he should have been allowed to discover the company's true intent in making the offending remarks to Monarch before his claims were dismissed. We conclude that, on remand, some discovery requests should be reconsidered.

Because U.S. West's remarks were protected by the absolute attorney privilege, the company's motivations for making them are irrelevant to Buckhannon's claim for intentional interference with contractual relations. *See Western Technologies, Inc. v. Sverdrup & Parcel, Inc., supra.* Thus, the trial court did not err in denying Buckhan-

non's discovery request because discovery could not have produced any facts that would have precluded summary judgment on that claim. *Sundheim v. Board of County Commissioners,* 904 P.2d 1337 (Colo.App.1995).

However, Buckhannon's claims for malicious prosecution and abuse of process are based on U.S. West's attempts to have him sanctioned for bringing the personal injury suit. This U.S. West conduct is not protected by the absolute attorney privilege, and the company's intent is therefore a relevant, discoverable fact for these two intentional tort claims. Accordingly, on remand, the trial court must reconsider any discovery request by Buckhannon pertaining to these claims. *See Wolther v. Schaarschmidt, supra.*

The judgment is affirmed as to the dismissal of the intentional interference with contract claims, is reversed as to the dismissal of the malicious prosecution and abuse of process claims, and the cause is remanded for further proceedings on these latter claims.

PLANK and NEY, JJ., concur.