The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 13, 2018

**2018COA173**

**No. 16CA2024 & 17CA1154 *Lees v. James* — Attorney Fees —
Tort Actions Dismissed Pursuant to C.R.C.P. 12(b) — Joint and
Several Fee Awards**

A division of the court of appeals considers whether a trial

court that is granting attorney fees pursuant to section 13-17-201,

C.R.S. 2018, may order that the plaintiff's attorney be jointly and

severally liable for such fees.  The division concludes that the trial

court has such authority under section 13-17-102(3), C.R.S.

2018.  This statutory authority creates a general rule that fee

awards under Article 17 of Title 13 may be joint and several, and is

not limited by its terms to awards related to claims or defenses

pursued without substantial justification under section 13-17-

102(2).  Further, since the decision to impose the joint and several

fee award in this case was not manifestly unfair, arbitrary, or unreasonable, the trial court did not abuse its discretion.

The division also makes clear that a trial court may consider unpublished opinions of the court of appeals to the extent the trial court finds such opinions persuasive. Accordingly, the division affirms the trial court's judgment.

COLORADO COURT OF APPEALS                    **2018COA173**

Court of Appeals Nos. 16CA2024 & 17CA1154
Adams County District Court No. 16CV30739
Honorable F. Michael Goodbee, Judge

Louella Maxine Patterson,

Plaintiff-Appellant and Cross-Appellee,

and

Robert A. Lees,

Attorney-Appellant and Cross-Appellee,

v.

M. Tracy James,

Defendant-Appellee and Cross-Appellant.

JUDGMENT AFFIRMED
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE TOW
Hawthorne and Bernard, JJ., concur

Announced December 13, 2018

Gill & Ledbetter, LLP, H. J. Ledbetter, Anne Whalen Gill, Castle Rock,
Colorado, for Plaintiff-Appellant and Cross-Appellee

Robert A. Lees & Associates, Robert A. Lees, Greenwood Village, Colorado, for
Attorney-Appellant and Cross-Appellee

Lewis Brisbois Bisgaard & Smith LLP, Nancy L. Cohen, Nicole Marie Black,
Denver, Colorado, for Defendant-Appellee and Cross-Appellant

¶ 1     Upon granting a C.R.C.P. 12(b) motion to dismiss a tort action in its entirety, a trial court is required to award attorney fees to the defendant. § 13-17-201, C.R.S. 2018. When doing so, does the court have the authority to order that judgment be joint and several between the plaintiff and plaintiff's counsel? For the first time in a published decision, we answer that question yes. In doing so, we also make clear that a trial court may consider unpublished opinions of this court to the extent the trial court finds such opinions persuasive.

## I.     Background

¶ 2     After her husband passed away, plaintiff, Louella Maxine Patterson, felt that her husband's adult children had engaged in inappropriate conduct in pursuing certain actions related to her husband's estate. With the assistance of her attorney, Robert A. Lees, Patterson filed a tort action against the children and an attorney, M. Tracy James, who represented one of the children, Elizabeth Danford, in seeking appointment as personal representative of the estate. In this action, Patterson asserted

claims of elder abuse, outrageous conduct, nondisclosure or concealment, false representation, and civil conspiracy.

¶ 3     The complaint levied numerous allegations against James: that she drafted all or part of the legal documents and provided legal advice to Danford and her brother; that neither the will, the application for informal probate, nor the initial legal proceedings filed by James accounted for Patterson's elective share of homestead rights as the decedent's spouse or any other spousal rights; that James failed to notify Patterson that probate proceedings had been initiated; that James, Danford, and Danford's brother conspired and agreed to informal probate in an attempt to "slip it through the probate legal process" unnoticed; that although Patterson attempted to contact James and Danford with questions regarding legal documents she received, she never received follow-up contact; and that throughout these probate proceedings, James continued to unreasonably bill the estate.

¶ 4 James moved to dismiss these claims pursuant to Rule 12(b)(5), and the trial court granted the motion,[1] finding that the litigation shield and strict privity rule barred Patterson's claims against James. James then moved for attorney fees under sections 13-17-201 and 13-17-102(2), C.R.S. 2018. After a hearing, the trial court awarded attorney fees and costs jointly and severally against Patterson and her attorney Lees pursuant to section 13-17-201.

¶ 5 Citing section 13-17-102(2), James asserted that Patterson's and Lees's defense of the fee request lacked substantial justification. As a result, James requested additional attorney fees incurred in pursuing the underlying fee request (sometimes referred to as fees on fees). The trial court denied James's request.

¶ 6 Patterson appeals the trial court's order dismissing her claims against James, and the order requiring her to pay James's attorney fees and costs. Lees appeals the trial court's order that he be jointly and severally liable for the fees and costs. James cross-appeals the denial of her request for fees on fees.

---

[1] In her response to the motion to dismiss, Patterson withdrew her claims of elder abuse and false representation.

## II.    Analysis

### A.    Leave to Amend the Complaint

¶ 7    Patterson and Lees both contend that instead of dismissing Patterson's complaint, the trial court should have permitted her to amend it.  However, this argument is not properly before us, because Patterson never took any step to amend the complaint.

¶ 8    As a threshold issue, Patterson would not have needed leave of the court to file an amended complaint, because no responsive pleading had yet been filed.  C.R.C.P. 15(a); *see also Fladung v. City of Boulder*, 165 Colo. 244, 247, 438 P.2d 688, 690 (1968) (holding that a motion to dismiss does not constitute a responsive pleading).  Therefore, while the motion to dismiss was pending and as long as no answer had been filed, Patterson was entitled to file an amended complaint without leave from the court.  She did not do so.

¶ 9    Even if Patterson was required to seek leave to amend her complaint, she failed to preserve this issue.  Patterson and Lees contend that this issue was preserved when Patterson requested to amend her complaint in her response to James's motion to strike

4

and her response to James's motion to dismiss.[2]  However, "[a] motion shall not be included in a response or reply to the original motion."  C.R.C.P. 121, § 1-15(1)(d).

¶ 10    Here, Patterson mentioned in both responses that she should be permitted to amend her complaint *if* the court determined that the complaint was not clear.  However, Patterson never explicitly requested leave to amend her complaint in a separate motion.  Simply suggesting in other motions that Patterson would amend her complaint if the court believed the complaint was unclear is not a motion for leave to amend.

¶ 11    Furthermore, "it is incumbent on the moving party to see to it that the court rules on the matter [s]he urges," and if the party fails to do so, she waives or abandons that argument on appeal.  *Feldstein v. People*, 159 Colo. 107, 111, 410 P.2d 188, 191 (1966), *abrogated on other grounds by Deeds v. People*, 747 P.2d 1266 (Colo. 1987); *see also Silverman v. Univ. of Colo.*, 26 Colo. App.

---

[2] Patterson and Lees also assert that this issue was preserved at other locations in the record; however, we see no such statements in the record as cited.

5

269, 280, 541 P.2d 93, 100 (1975) (applying a similar analysis in a civil context), *rev'd on other grounds*, 192 Colo. 75, 555 P.2d 1155 (1976).

¶ 12     If Patterson believed that these aspirational statements were properly viewed as motions for leave to amend her complaint, she was obligated to urge the trial court to rule on the matter.  Because Patterson failed to do so, she waived this argument on appeal.  We therefore decline to address the contention further.

### B.     C.R.C.P. 12(b)(5) Motion to Dismiss

¶ 13     Lees and Patterson raise separate issues on appeal regarding the trial court's order granting James's Rule 12(b)(5) motion to dismiss.  Lees contends that the trial court converted the motion to dismiss to a C.R.C.P. 56 motion for summary judgment when it considered matters outside the pleading, thus precluding attorney fees under section 13-17-201.

¶ 14     Patterson contends that the trial court improperly dismissed her claims against James by misapplying the litigation shield and strict privity rule.  Patterson also contends that the trial court

6

misapplied the pleading standard in ruling on James's motion to dismiss. We reject each of these contentions in turn.

### 1. Standard of Review

¶ 15   Lees states that his issue was preserved at the hearing on attorney fees. Patterson states that her issue was preserved in a hearing memorandum regarding the new Rule 12(b)(5) standard of review and her response to the motion to dismiss. We agree that both issues were preserved.

¶ 16   We review de novo a trial court's ruling on a motion to dismiss. *Yadon v. Lowry*, 126 P.3d 332, 335 (Colo. App. 2005). We apply the same standards as the trial court, accepting all of the factual allegations in the complaint as true and viewing those allegations in the light most favorable to the plaintiff. *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006).

### 2. Conversion to a C.R.C.P. 56 Motion

¶ 17   On a motion to dismiss, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in C.R.C.P. 56." C.R.C.P. 12(b). "However, if matters outside of the

7

complaint are submitted to the trial court, but not considered in review of the [Rule] 12(b)(5) motion to dismiss, the trial court need not convert the motion to dismiss into a motion for summary judgment." *Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 386 (Colo. 2001).

¶ 18    Here, Lees contends that "matters outside the pleading" were presented to the trial court when James and Patterson attached exhibits to their motion to dismiss and response to the motion to dismiss, respectively.  However, there is no indication that the trial court considered these exhibits in ruling on James's motion to dismiss.  To the contrary, the trial court explicitly acknowledged in its order that "the court may only consider matters stated within the complaint itself, and may not consider information outside of the confines of that pleading."  The trial court then itemized the specific allegations in the complaint related to James's conduct.  Accordingly, because there is no indication that the trial court considered the extraneous material the parties had submitted, we cannot conclude that the trial court converted the motion to dismiss into a Rule 56 motion for summary judgment.  The trial

court, therefore, was not precluded from awarding attorney fees under section 13-17-201.

### 3. Litigation Shield

¶ 19     An attorney's statements, even if defamatory, when made in the course of, or in preparation for, judicial proceedings in a filed case cannot be the basis of a tort claim if the statements are related to the litigation. *Begley v. Ireson,* 2017 COA 3, ¶ 13 (citing *Buckhannon v. US W. Commc'ns, Inc.*, 928 P.2d 1331, 1335 (Colo. App. 1996)). This litigation privilege exists to encourage and protect free access to the courts for litigants and their attorneys. *Id.*

¶ 20     The privilege not only shields attorneys from defamation claims arising from statements made in the course of litigation, but also bars other nondefamation claims that stem from the same conduct. *Buckhannon,* 928 P.2d at 1335. When the statements are integral to the judicial process, the immunity provided is absolute. *Merrick v. Burns, Wall, Smith & Mueller, P.C.,* 43 P.3d 712, 714 (Colo. App. 2001). "It is necessary to consider the nature of the duties performed and whether such duties are an essential and integral part of the judicial process." *Id.* The litigation privilege

therefore applies "regardless of the tort theory" invoked, if the basis of the claim is a statement made in the course of litigation. *Buckhannon*, 928 P.2d at 1335.

¶ 21    Here, Patterson's claims against James arise from James's representation of the personal representative in the underlying probate litigation. Patterson alleged that James drafted and filed legal documents, provided legal advice on how to commence informal probate proceedings, and communicated (or failed to communicate) as counsel in the probate proceeding. Because all of these statements were essential to the judicial process, namely the representation of the personal representative in the probate proceedings and drafting the necessary pleadings, the litigation privilege applies, and James is thus entitled to absolute immunity as a matter of law.

¶ 22    Though not a statement protected by the litigation shield, the alleged failure to inform Patterson that probate proceedings had commenced is not actionable. "[A]n attorney's liability to a non-client is limited to the narrow set of circumstances in which the attorney has committed fraud or a malicious or tortious act,

including negligent misrepresentation." *Baker v. Wood, Ris & Hames, Prof'l Corp.*, 2016 CO 5, ¶ 35. Dissatisfied beneficiaries of a testator's estate do not have standing to bring claims against the attorney who drafted the testator's estate planning documents. *Id.* at ¶ 18.

### 4. Pleading Standard for a Motion to Dismiss

¶ 23 To survive summary dismissal for failure to state a claim under Rule 12(b)(5), a party must plead sufficient facts that, if taken as true, suggest plausible grounds to support a claim for relief. *Warne v. Hall*, 2016 CO 50, ¶ 24 (adopting a heightened standard of pleading in Colorado that requires a complaint to allege plausible grounds for relief, not merely speculative grounds).

¶ 24 In *Warne,* the supreme court adopted this new standard over the old standard requiring dismissal only if "the plaintiff can prove no set of facts in support of a claim that would entitle the plaintiff to relief."[3] *Id.* at ¶ 11. However, if a plaintiff has failed to state a claim under the old standard, then the claim necessarily does not

---

[3] *Warne v. Hall,* 2016 CO 50, was announced on June 27, 2016, four days after James filed her motion to dismiss.

survive the new test, because the plaintiff has failed to establish any facts, much less plausible ones. *See Semler v. Hellerstein*, 2016 COA 143, ¶ 26, *rev'd on other grounds sub nom. Bewley v. Semler*, 2018 CO 79, ¶ 26.

¶ 25 Because we conclude that the trial court did not misapply the litigation shield doctrine, Patterson's claim would fail under either *Warne*'s plausible grounds standard or the old "no set of facts" pleading standard. Thus, we do not need to decide whether the trial court misapplied the pleading standard.

## C. Attorney Fees

¶ 26 Lees and Patterson also raise separate issues on appeal regarding the trial court's order granting attorney fees and costs jointly and severally against them. Lees raises three issues pertaining to this order: (1) the trial court erred in awarding attorney fees jointly and severally under section 13-17-201; (2) the trial court impermissibly violated the Colorado Court of Appeals's citation policy by basing its attorney fees order in part on an unpublished Colorado Court of Appeals case; and (3) the trial court erred in basing its award of attorney fees on improper evidence.

¶ 27 Patterson contends that the trial court erred in awarding attorney fees jointly and severally against an eighty-seven-year-old, impoverished, unemployed, homeless widow who played no active part in directing the litigation and who demonstrated no current, nor future, ability to pay such fee.

¶ 28 On cross-appeal, James contends that the trial court erred in failing to make factual findings when it ruled on James's motion for attorney fees and costs and declined to assess fees on fees under section 13-17-102(2). We disagree with each of these contentions.

### 1. Standard of Review

¶ 29 Lees and Patterson both state that their issues were preserved in Patterson's response to James's request for a ruling on her motion for attorney fees and costs. James states that her issue was preserved in briefing in support of her request for attorney fees. We agree that these issues were preserved.

¶ 30 We review the trial court's decision to award attorney fees and costs for an abuse of discretion, but we review the legal conclusions which provide the basis for that decision de novo. *Jorgensen v. Colo. Rural Props., LLC*, 226 P.3d 1255, 1259 (Colo. App. 2010). A

trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230 (Colo. App. 2006).

### 2. Joint and Several Liability

¶ 31 Our primary task when construing a statute is to give effect to the General Assembly's intent, which is determined first by looking to the plain language of the statute. *Bostelman v. People*, 162 P.3d 686, 689-90 (Colo. 2007). We consider statutes as a whole in order to effectuate legislative intent, and we give consistent, harmonious, and sensible effect to all the statute's parts. *Colo. Dep't of Revenue v. Cray Computer Corp.*, 18 P.3d 1277, 1281 (Colo. 2001). However, where "a literal interpretation of the statute . . . leads to an absurd result," the intent of the legislature will prevail. *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1031 (Colo. 1998).

¶ 32 Article 17 of Title 13 provides Colorado courts with the authority to award attorney fees in certain circumstances. §§ 13-17-101 to -304, C.R.S. 2018. The legislature has instructed courts to "liberally construe the provisions of [the] article to effectuate substantial justice . . . ." § 13-17-101, C.R.S. 2018.

¶ 33    Section 13-17-102(1) bestows a general grant of authority on any court of record to award reasonable attorney fees as part of a judgment, provided such an award is not precluded elsewhere in the article.  A later subsection contains a similar general grant of authority: "When a court determines that reasonable attorney fees should be assessed, it shall allocate the payment thereof among the offending attorneys and parties, jointly or severally, as it deems most just, and may charge such amount, or portion thereof, to any offending attorney or party."  § 13-17-102(3).

¶ 34    Section 13-17-102(2), in contrast, is a more specific rule that requires the court to award fees against any attorney or party who has brought or defended a civil action that the court determines lacked substantial justification.  Section 13-17-201 contains a similar specific mandate, providing that where a tort action is dismissed in its entirety pursuant to a Rule 12(b) motion, the defendant "shall have judgment for his reasonable attorney fees in defending the action."  The purpose of the latter provision is to "discourage the institution or maintenance of unnecessary tort claims."  *US Fax Law Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512,

15

518 (Colo. App. 2009) (citation omitted). There are two stark differences between the provisions: (1) section 13-17-102(2) applies regardless of when the matter is resolved, whereas section 13-17-201 applies only if the case is dismissed pursuant to Rule 12(b); and (2) section 13-17-102(2) requires a finding of lack of substantial justification, whereas section 13-17-201 applies automatically, without regard to whether the claims lacked justification.

¶ 35    Nothing in either of the specific mandates, however, exempts the concurrent application of the general rule set forth in section 13-17-102(3). Nor does the text of section 13-17-102(3) limit its application only to fee awards entered pursuant to section 13-17-102. For these reasons, Lees's statutory interpretation argument — that had the legislature intended to include the authority to make an award under section 13-17-201 joint and several, it would have said so — must fail. The legislature did not need to grant the specific authority for a joint and several award in section 13-17-201, because it had already created the general authority to do so in section 13-17-102(3).

16

¶ 36    Moreover, interpreting the statute in the manner urged by Lees could lead to an absurd result.  In this case, for example, in light of the complexity of the legal issues presented and Patterson's deferential nature, the trial court found that Lees had appeared to make the critical legal decisions in this case.  As the trial court aptly noted, it would be difficult to contemplate the deterrent effect intended by the legislature were fees to be awarded solely against Patterson.  Rather, by generally authorizing joint and several fee awards under Article 17, the legislature enables the court to "effectuate substantial justice."  § 13-17-101.

¶ 37    Nor do we discern any abuse of discretion by the trial court in its decision to enter the fee judgment jointly and severally.  In exercising this authority, a trial court should allocate sanctions between the attorney and the client according to their relative degrees of responsibility for the violation of the act.  *Anderson Boneless Beef, Inc. v. Sunshine Health Care Ctr., Inc.*, 878 P.2d 98, 101 (Colo. App. 1994).  The record amply supports the trial court's conclusion that Lees was the driving force behind the strategic decisions.  As to Patterson, the trial court explicitly acknowledged

17

that it was required to consider the factors set forth in section 13-17-103, C.R.S. 2018. While the trial court appropriately considered Patterson's age and limited resources, it also acknowledged the statutory goal of deterrence of unnecessary tort litigation. In view of the trial court's findings, which find ample support in the record, we cannot conclude that the trial court's decision to impose joint and several liability was manifestly arbitrary, unreasonable, or unfair.

### 3. Reliance on Unpublished Case

¶ 38 Lees also argues that the trial court erred when it considered an unpublished court of appeals opinion that James provided to the court. He argues that both counsel's citation to an unpublished opinion and the trial court's consideration of that case for its persuasive impact run afoul of the court of appeals's "Policy Concerning Citation of Unpublished Opinions." This policy provides that "citation of unpublished opinions is forbidden, with the following exceptions: (1) [u]npublished opinions may be cited to explain the case history or to establish the doctrines of law of the case, res judicata, or collateral estoppel." *Colorado Court of*

*Appeals, Citation Policies, Policy Concerning Citation of Unpublished Opinions* (2018), https://perma.cc/5GTB-QMA5. Lees misunderstands the reach of that policy.

¶ 39    The Colorado Supreme Court exercises administrative authority over the courts of this state. *See, e.g.*, § 13-2-108, C.R.S. 2018 (addressing the supreme court's authority to promulgate rules of civil procedure); § 13-2-109, C.R.S. 2018 (addressing the supreme court's authority to promulgate rules of criminal procedure); § 13-2-110, C.R.S. 2018 (addressing the supreme court's power to institute rules of practice and prescribe forms of process to be used). The Colorado Court of Appeals has no such authority. *See* §§ 13-4-101 to -113, C.R.S. 2018.

¶ 40    Exercising its administrative authority, the supreme court has promulgated the Colorado Appellate Rules, including C.A.R. 35(f) which addresses unpublished opinions of the court of appeals. C.A.R. 35(e) makes clear that published opinions are binding precedent for "all lower court judges," but our supreme court has made it equally clear that unpublished opinions "have no value as precedent," *Welby Gardens v. Adams Cty. Bd. of Equalization*, 71

P.3d 992, 999 (Colo. 2003). But C.A.R. 35(f) does not prohibit parties from *citing* an unpublished decision in a trial court, and the court of appeals's policy merely addresses the use of unpublished opinions in briefs filed with, and in arguments presented to, the court of appeals. Consequently, the trial court did not err when it considered the unpublished decision for whatever persuasive value it may have had.

¶ 41    That being said, we do not mean to suggest that a trial court must consider such decisions at all. We simply acknowledge that unpublished does not mean confidential, and that our unpublished opinions are routinely shared among, for example, certain practice groups and specialty bars. As a result, it is not uncommon for trial courts to be asked to consider such an opinion. Because C.A.R. 35(e) does not endow unpublished opinions with precedential weight, however, a trial court remains free to disregard them entirely if it so chooses.

¶ 42    We also stress that our opinion is in no way intended to impose an obligation on counsel to cite to unpublished opinions. Indeed, there is at present no comprehensive searchable database

available to counsel. Thus, counsel cannot be expected to ferret out every unpublished case that may have conceivable persuasive effect and provide it to the trial court.

¶ 43    Finally, we note with approval that, in this case, the opposing party was provided with a copy of the unpublished opinion and given the opportunity to argue its persuasive value to the trial court. Should a party wish the court to consider an unpublished opinion, or should a court on its own discover such an opinion it finds persuasive, all parties should be provided with similar notice and an opportunity to be heard.

### 4.    Reliance on Improper Evidence

¶ 44    Lees's argument that the trial court relied on improper evidence in arriving at the fee award is also unavailing. When a statute providing for an attorney fee award does not provide a specific definition of "reasonableness," the amount must be determined in light of all the circumstances, based on the time and effort reasonably expended by the prevailing party's attorney. *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo. App. 1996). In awarding attorney fees, a trial court may consider (1) the

21

amount in controversy; (2) the time required to effectively represent the client; (3) the complexity of the action; (4) the value of the legal services to the client; and (5) the customary practice in the legal community regarding fees in similar actions. *See Fang v. Showa Entetsu Co.*, 91 P.3d 419, 424 (Colo. App. 2003); *Porter v. Castle Rock Ford Lincoln Mercury, Inc.*, 895 P.2d 1146, 1150 (Colo. App. 1995); *see also* Colo. RPC 1.5(a)(3) (recognizing "the fee customarily charged in the locality for similar legal services" as a factor to consider). There is no requirement that the court rely on particular forms of evidence in calculating the reasonableness of these fees.

¶ 45    Here, James met her burden of establishing reasonableness by providing testimony at the evidentiary hearing as well as sworn affidavits prior to the hearing. Both James and her attorney testified at the hearing. And each affidavit was supported by a redacted fee bill. Because it is not improper for the trial court to consider testimony and affidavits in determining the reasonableness of an attorney fee award under section 13-17-201, the trial court did not err in relying on this evidence.

### 5.   James's Claim for Attorney Fees on Fees

¶ 46   Section 13-17-102(2) authorizes the court to award reasonable attorney fees against "any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." The trial court has broad discretion in deciding whether to grant or deny attorney fees under section 13-17-102. *Consumer Crusade, Inc. v. Clarion Mortg. Capital, Inc.*, 197 P.3d 285, 289 (Colo. App. 2008). "When granting an award of attorney fees, the court shall specifically set forth the reasons for said award[.]" § 13-17-103(1).

¶ 47   Here, with respect to the opposition to both the motion to dismiss and the motion for attorney's fees, the trial court explicitly declined to find that Patterson's or Lees's positions lacked substantial justification. We cannot say this determination was an abuse of the court's discretion.

### D.   Appellate Attorney Fees

¶ 48   Lastly, James requests an award of attorney fees incurred defending this appeal under section 13-17-201. Because James was successful in defending this appeal of claims dismissed under

Rule 12(b), she is entitled to such an award. *See Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 608 (Colo. App. 2008); *Wark v. Bd. of Cty. Comm'rs*, 47 P.3d 711, 717 (Colo. App. 2002). We leave the determination of the amount of attorney fees to the trial court on remand. *See* C.A.R. 39.1; *Dubray*, 192 P.3d at 608.

## III. Conclusion

¶ 49 The judgment is affirmed. We remand the case to the trial court to enter an award of reasonable attorney fees incurred by James in defending this appeal.

JUDGE HAWTHORNE and JUDGE BERNARD concur.