23CA2166 Muth v Wright 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2166
City and County of Denver District Court No. 23CV61
Honorable Martin F. Egelhoff, Judge

---

Steven E. Muth, individually and on behalf of the Estate of Zachary S. Muth,

Plaintiff-Appellant,

v.

Lonnie Wright, Patrick D. Vellone, Brenton L. Gragg, and Allen Vellone Wolf Helfrich & Factor P.C., a Colorado Professional Corporation,

Defendants-Appellees.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Lum and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Westerfield & Martin, LLC, Zachary S. Westerfield, Denver, Colorado, for Plaintiff-Appellant

Burk & Burk, Robert E. Burk, Centennial Colorado, for Defendant-Appellee Lonnie Wright

Haddon, Morgan & Foreman, P.C., Adam Mueller, Jacob B. McMahon, Denver, Colorado, for Defendants-Appellees Patrick D. Vellone, Brenton L. Gragg, and Allen Vellone Wolf Helfrich & Factor P.C.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Plaintiff, Steven E. Muth, appeals the district court's decisions (1) granting the motion of defendants Patrick D. Vellone, Brenton L. Gragg, and Allen Vellone Wolf Helfrich & Factor P.C., a Colorado professional corporation (collectively, Vellone) to dismiss Steven's complaint for failing to state a claim; and (2) rejecting Steven's request for entry of default judgment against defendant Lonnie Wright.  We affirm the judgment of the district court and remand with directions.

## I.    Background

### A.    The Contract Dispute

¶ 2    This appeal arises from the second of two cases between Steven, Wright, and Vellone (Wright's counsel).  In the first dispute, in 2019, Wright sued Steven and his company MAS Corp. in Arapahoe County Case No. 18CV32684, alleging that they wrongfully withheld the profits of an agreement — to renovate and

resell homes — between Steven, Steven's son Zachary S. Muth,[1] and Wright.[2]

¶ 3     After a venue transfer, Wright sought to amend his complaint in what was now Denver District Court Case No. 19CV89 (hereafter, 19CV89) to add claims against Zachary, alleging that because Zachary served as the president for MAS Corp., and he and Steven both controlled MAS Corp. and were part of the profit-sharing agreement, Zachary needed to be joined as a defendant.  The district court allowed the amendment, noting that "the amendments made are not futile or surprising in light of discovery."

¶ 4     Before 19CV89 was resolved, Zachary passed away and Wright dismissed the claims against him.  After a bench trial, the district court in 19CV89 issued findings of fact and conclusions of law in favor of Wright and against Steven and MAS Corp., awarding Wright damages for breach of contract and civil theft.  Steven separately appealed 19CV89, and a division of this court recently affirmed the

---

[1] Because of Steven and Zachary Muth's shared surname, we respectfully refer to them by their first names in this opinion.
[2] We may take judicial notice of the contents of court records in related proceedings.  *Vento v. Colo. Nat'l Bank,* 985 P.2d 48, 52 (Colo. App. 1999).

district court. *See Wright v. Muth*, (Colo. App. No. 23CA1729, Jan. 30, 2025) (not published pursuant to C.A.R. 35(e)).

## B. The Wrongful Death Dispute

¶ 5 In 19CV89 Steven twice raised alleged ethical conflicts between himself and Wright's counsel. Steven's initial pro se answer first requested that Vellone withdraw because the firm represented him "on very similar matters relating to construction and more" and the firm had been "intrinsically involved with Steven for many years," so their involvement in the case would be "[unfair] and unethical." This request was omitted from subsequent amended answers filed through Steven's counsel, but Steven later filed a pro se motion in 2021 again requesting Vellone's disqualification. According to the court's minute orders from December 20, 2021, the court denied the motion on the ground that the matters Steven highlighted were not substantially related to Wright's case.

¶ 6 But, before 19CV89 was resolved, Steven, acting pro se, separately sued Wright and Vellone on his own and Zachary's estate's behalf, raising the same ethical violations. Steven later filed two amended complaints through counsel. In the second amended

3

complaint (SAC), Steven alleged that Vellone attorneys represented him from approximately 2002-2014 on various legal matters and then improperly used confidential information it learned about Steven and Zachary against him in 19CV89.  Steven also alleged that Zachary was only added to the case to force Steven to settle. Steven then argued that Vellone's use of confidential information, including Zachary's medical history, caused Zachary "extreme and emotional hardship," causing Zachary to use illegal drugs and die from an overdose.  Steven raised claims for abuse of process and wrongful death against Vellone.

¶ 7     Steven also applied for entry of default judgment against Wright, arguing that Wright failed to timely respond to the first amended complaint (FAC).  Two days later, Steven submitted the SAC.  Wright soon retained counsel to argue default judgment was unwarranted because Steven had failed to serve Wright with the FAC in accordance with C.R.C.P. 4(e)(1).  Wright also pointed out that the SAC raised no claims against him and requested he be dismissed from the case.

¶ 8     Vellone moved to dismiss the SAC for failing to state a claim under C.R.C.P. 12(b)(5).  Steven's response contested these

4

arguments, but it also explained that he was withdrawing the abuse of process claim. But the abuse of process claim was the wrongful act undergirding the wrongful death claim.

¶ 9　　The district court sided with the defendants on the motion to dismiss and the application for default judgment. In dismissing the abuse of process claim, the court found that "although the amended complaint sufficiently alleges ulterior motives by the defendants in instituting the underlying lawsuit and thereafter joining Zachary Muth as a party, the complaint contains no facts establishing an improper use of the judicial process." The court noted that Steven "fail[ed] to assert any facts demonstrating how the defendants used the judicial process in any fashion that is outside its regular and intended course" and that the SAC was therefore facially deficient. The district court acknowledged that, in 19CV89, the court addressed Steven's prior representation issue and denied the motion to disqualify, and the district court stated here that "an attorney's resistance to a motion to disqualify does not constitute an improper use of the judicial process."

¶ 10　　The court added that it took judicial notice of the findings of fact and conclusions of law order issued in 19CV89 and that the

"judgment ultimately entered against both Steven and Zachary Muth in the underlying lawsuit belies any improper or untoward use of the judicial process." The court was careful to clarify in a footnote that it was not taking judicial notice of the evidentiary findings in 19CV89's order; rather, only "of the final judgment ultimately entered."

¶ 11 As a result, the court found that the SAC failed to state a viable claim for abuse of process. For wrongful death, the court found that, because Steven failed to allege a plausible claim for abuse of process, there was no underlying "wrongful act" to support an inherently derivative wrongful death claim.

¶ 12 Finally, the court declined to enter default judgment against Wright, finding that the "pleadings demonstrate that the defendant was not properly served with process" and "[m]oreover, the original [complaint and FAC] were superseded with the filing [of] a [SAC]" that was never served on Wright. Furthermore, the court noted, because it granted Vellone's motion to dismiss the SAC, "entry of default on a facially implausible claim is inappropriate."

¶ 13 This appeal followed, raising two main issues. First, Steven argues that the district court erred by granting Vellone's motion to

dismiss the SAC.  Second, Steven argues the court erred by declining to enter a default judgment against Wright.  These contentions were preserved.  *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25.  Vellone and Wright, in turn, request appellate attorney fees and costs.

## II.    Analysis

### A.    The SAC Was Properly Dismissed

¶ 14    Steven raises several sub-issues concerning the district court's dismissal of the SAC.  First, he argues that the SAC sufficiently pleaded facts alleging an abuse of process.  Second, Steven alleges the district court erred by taking judicial notice of information in court filings from 19CV89 because the court (1) incorrectly noted that judgment was entered against both Zachary and Steven; (2) took notice of the court's findings and conclusions of law in 19CV89; and (3) improperly found those rulings had a preclusive effect in this case.  Third, Steven argues the district court should have converted the motion to dismiss into a motion for summary judgment because it reviewed and relied on information in exhibits attached to Vellone's motion.  Finally, Steven argues he should be

permitted to pursue his wrongful death claim because his abuse of process claim was viable.

1.    Standards of Review and Applicable Law

¶ 15    Under C.R.C.P. 12(b)(5), a party may move to dismiss a complaint for "fail[ing] to state a claim upon which relief can be granted." "[W]e review de novo the district court's ruling on a C.R.C.P. 12(b)(5) motion to dismiss . . . ." *Peña v. Am. Fam. Mut. Ins. Co.*, 2018 COA 56, ¶ 12.

¶ 16    "[T]o survive a motion to dismiss for failure to state a claim, a plaintiff must allege a plausible claim for relief." *N.M. v. Trujillo*, 2017 CO 79, ¶ 20. Complaints may be dismissed under Rule 12(b)(5) "if the substantive law does not support the claims asserted, or if the plaintiff's factual allegations do not, as a matter of law, support a claim for relief." *Peña*, ¶ 13 (citations omitted). But "a court may consider only the facts alleged in the complaint, documents attached as exhibits or referenced in the complaint, and matters of which the court may take judicial notice"; otherwise the court must treat the matter as a motion for summary judgment. *Id.* at ¶ 14 & n.3; *see also* C.R.C.P. 12(b).

¶ 17　When reviewing motions to dismiss under Rule 12(b)(5), "[w]e accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Nonetheless, we are not required to accept as true legal conclusions that are couched as factual allegations." *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011) (citation omitted); *see also Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006) ("There are a few exceptions to this rule, such as when the facts alleged in the complaint run counter to facts of which the court can take judicial notice.").

¶ 18　As relevant here, the Wrongful Death Act provides,

> When the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured.

§ 13-21-202, C.R.S. 2024.

¶ 19　"[T]he right of the heirs to collect damages in a wrongful death case does not arise from a separate tort, but instead is wholly

9

derivative of the injury to the decedent." *Steedle v. Sereff*, 167 P.3d

135, 140 (Colo. 2007); *see also Pizza Hut of Am., Inc. v. Keefe*, 900

P.2d 97, 102 (Colo. 1995) ("The cause of action created by this

statute arises out of tortious acts which injured the decedent and

resulted in the decedent's death . . . .").

> Any wrongful death claim, then, contains two
> elements: (1) the death of a person, and (2) a
> wrongful act that would have entitled the
> person "injured" to maintain an action, had
> the person survived. . . . [The second element]
> depends upon the claim that the decedent
> would have had if she had survived her
> injuries.

*Stamp v. Vail Corp.*, 172 P.3d 437, 451 (Colo. 2007) (Eid, J.,

concurring in part and concurring in the judgment only in part).

¶ 20    Finally, for abuse of process claims,

> a plaintiff [must] prove the following elements:
> (1) an ulterior purpose for the use of judicial
> process; (2) willful action in the use of that
> process which is not proper in the regular
> course of the proceedings, that is, use of a
> legal proceeding in an improper manner; and
> (3) resulting damage.

*Palmer v. Diaz*, 214 P.3d 546, 550 (Colo. App. 2009). "Although the

litigant's motive may be important in determining whether there

was an ulterior purpose, it still must be established that, viewed

10

objectively, there was an improper use of the process." *Walker*, 148 P.3d at 394. The improper use at the heart of an abuse of process claim "is the use of a legal proceeding primarily to accomplish a purpose that the proceeding was not designed to achieve." *Id.*

¶ 21  A plausible claim for relief in an abuse of process action must allege "not only proof of an ulterior motive but proof of willful actions by the defendant in the use of process which are not proper in the regular conduct of a proceeding." *Id.*; *Trujillo*, ¶ 20. "[I]f the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint[,] there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim." *Parks v. Edward Dale Parrish LLC*, 2019 COA 19, ¶¶ 13, 16 (second alteration in original) (quoting *Colo. Cmty. Bank v. Hoffman*, 2013 COA 146, ¶ 37) ("[B]ringing a malpractice case and carrying it to its natural end . . . doesn't constitute an improper use of process, no matter the motive."). *Compare Walker*, 148 P.3d at 394-96 (Even with an alleged ulterior motive, defendants' filing of complaints under an animal control ordinance was "a proper use of the process mandated by the Ordinance" as the filing of complaints was

envisioned by the proceedings and "[a]ny advantages that they may have obtained as a result of [plaintiff's] convictions for violating the Ordinance were regular and legitimate goals which the proceedings were designed to achieve."), *and James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail,* 892 P.2d 367, 373-74 (Colo. App. 1994) (where party's filing of lis pendens sought the intended use of the process there was no abuse of process), *with Colo. Homes, Ltd. v. Loerch-Wilson,* 43 P.3d 718, 723 (Colo. App. 2001) (abuse of process finding was proper where "the jury reasonably could find that plaintiffs' motivation in seeking the restraining order did not relate to any alleged assault or threat of assault").

### 2.    Application

### a.    Abuse of Process and Wrongful Death

¶ 22    The district court properly dismissed Steven's wrongful death claim because it is derivative of, and dependent on, his facially deficient abuse of process claim.  Steven's abuse of process claim was facially deficient because it did not sufficiently allege facts that, when taken as true and viewed in the light most favorable to the plaintiff, constituted an improper use of a legal proceeding.  *See Ritter,* 255 P.3d at 1088; *see also Diaz,* 214 P.3d at 550.

¶ 23    Steven's SAC essentially alleged two abuses of process that led to Zachary's death.  First, that Vellone learned confidential information about Steven and Zachary after it represented Steven and used this information to gain an "unfair advantage" in the litigation against him and Zachary.  Second, that Zachary "was added to the lawsuit as leverage against Steven Muth . . . to force Steven Muth to settle the claims in the underlying lawsuit."

¶ 24    The district court correctly found that these factual allegations met the requirements of the first element of abuse of process — namely, that there was an alleged "ulterior purpose for the use of judicial process." *Diaz*, 214 P.3d at 550.  But, even taken as true and in the light most favorable to Steven, the district court also correctly found that these allegations could not support the second element — "the use of a legal proceeding primarily to accomplish a purpose that the proceeding was not designed to achieve." *Walker*, 148 P.3d at 394.

¶ 25    Wright, through Vellone, filed 19CV89 to resolve a contract dispute among the parties, which the parties saw to its conclusion with the court awarding Wright damages for breach of contract and civil theft.  Ultimately, Wright bringing a lawsuit "and carrying it to

13

its natural end to obtain a result such an action is designed to achieve doesn't constitute an improper use of process, no matter the motive." *Parks*, ¶ 16.

¶ 26 Further, Vellone's alleged use of confidential information does not necessarily lead to the conclusion that Vellone used the joinder procedure in an improper manner, sufficient to support an abuse of process claim. Zachary's joinder, regardless of the alleged improper motive, was granted by the district court in 19CV89 based on discovery concerning Zachary's connection to MAS Corp. and the alleged agreement. This reasoning is independent of Vellone's alleged improper use of confidential information.

¶ 27 Because the abuse of process claim is facially deficient, Steven's wrongful death claim fails as a matter of law. A wrongful death claim depends on the wrongful acts suffered by the deceased party, and the right of action he would have been able to maintain but for his injuries. *See Keefe*, 900 P.2d at 102; *see also Stamp*, 172 P.3d at 451. Steven cannot pursue a wrongful death claim without Zachary having been able to maintain the abuse of process action.

¶ 28　　As a result, the district court did not err by dismissing the SAC for failing to state a claim.  *See Trujillo*, ¶ 20.

　　b.　　Judicial Notice, Facts Outside of the Pleadings, and Preclusion

¶ 29　　To Steven's claim that the district court erred by taking judicial notice of facts and legal conclusions in the 19CV89 court filings to preclude Steven's abuse of process claims, we conclude that any claimed error was harmless in light of our conclusion that Steven's complaint was properly dismissed for failing to state a claim as a matter of law.  *See* C.A.R. 35(c); C.R.C.P. 61.

¶ 30　　The district court's order overwhelmingly focused on the allegations in the SAC, directly citing Steven's factual allegations. And only after concluding that the complaint was facially deficient as a matter of law did the court add that, "[m]oreover, having taken judicial notice of the court file in case number 19CV89, the [court] finds that judgment ultimately entered against both Steven and Zachary Muth in the underlying lawsuit belies any improper or untoward use of the judicial process."  Therefore, any error resulting from this alternative reasoning was harmless because the court properly dismissed the complaint for failing to state a claim

15

without relying on the proceedings in 19CV89. *See* C.A.R. 35(c); C.R.C.P. 61.

¶ 31   It is also clear that that the district court did not find that findings of fact and conclusions of law in 19CV89 precluded Steven's claims, as the reference to the outcome in 19CV89 was merely an additional source of support and the court did not mention preclusion. And to the fact that the court erroneously stated that judgment had been entered against Zachary and Steven in 19CV89 when Zachary had been dismissed from the case, this was also harmless. *See* C.A.R. 35(c); C.R.C.P. 61.

¶ 32   Our review of the district court's order dismissing the SAC also shows that the court did not rely on information outside of the SAC or information not properly before it; thus there was no need to convert the motion into one for summary judgment. *See Peña*, ¶ 14. The court began its order by stating that it considered "the motion, the plaintiff's response, the reply thereto, as well as the supplements to those pleadings, and . . . reviewed the Court's file and applicable authorities." But its background section only briefly cites the procedural history leading to the motion and then solely cites facts from the SAC. And in the court's analysis for the abuse

16

of process and wrongful death claims, it relies solely on the facts alleged in the SAC, save for its brief mention of taking judicial notice of the filings in 19CV89.

¶ 33    As a result, the district court did not rely on improper information outside of the complaint and did not need to treat the motion to dismiss as a motion for summary judgment. *See id.* So the court did not err.

## B.    The Court Properly Rejected the Application for Default Judgment

¶ 34    Next, Steven contends that the district court erred by rejecting his application for entry of default judgment against Wright. Steven argues that (1) the court misapplied the requirements of C.R.C.P. 4(e)(1); (2) he did not have to serve Wright with the SAC after Steven applied for default judgment; and (3) Wright would not be entitled to relief from the dismissal of the SAC.

¶ 35    A default judgment may be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." C.R.C.P. 55(a); *see also* C.R.C.P. 55(b)(1) ("A party entitled to a judgment by default shall

apply to the court therefor . . . ."). "A default judgment comprises two steps: 'entry of default' by the clerk and 'entry of default judgment' by the court." *Ferraro v. Frias Drywall, LLC*, 2019 COA 123, ¶ 11.

¶ 36   The court noted "that entry of default on a facially implausible claim is inappropriate." We agree. A similar situation to this issue arose in *Schenck v. Van Ningen,* and there a division of this court held that a district court may refuse to enter default judgment against a defendant when "the pleadings on their face reveal that no cause of action has been stated by plaintiffs." 719 P.2d 1100, 1102 (Colo. App. 1986). Notably, in *Schenck* a codefendant had also responded and "pled successfully for entry of summary judgment." *Id.* at 1101-02. The division noted that "[i]t would be inconsistent to enter judgment against the [defendant] after having held the same facts do not state a claim for relief against the [codefendant] who, under the facts here, occupies the same legal position." *Id.* at 1102. The same reasoning applies here.

¶ 37   Furthermore, Steven's filing of the SAC rendered Wright's non-response to the FAC irrelevant. The SAC superseded the FAC and became the operative pleading. *See Currier v. Sutherland*, 218 P.3d

18

709, 715 (Colo. 2009) ("Once a plaintiff files an amended complaint, the original complaint is superseded, and the defendant must answer the amended complaint."); *see also Ireland v. Wynkoop*, 539 P.2d 1349, 1355 (Colo. App. 1975) ("The amended complaint, which iterated and expanded the original complaint, superseded the original complaint. Hence, any errors in the trial court's ruling regarding the original complaint were made moot or waived by the filing of the amended complaint, and cannot be raised on this appeal.") (citation omitted).

¶ 38     To Steven's final contentions — that the court misapplied C.R.C.P. 4(e)(1), that he was not required to serve Wright with the SAC, and that Wright was not entitled to relief from the motion to dismiss — these arguments are largely irrelevant in light of our conclusions that the district court properly dismissed the SAC (which superseded the FAC) for failing to state a claim, and properly rejected Steven's application for default judgment. This is particularly true given that the SAC raised no claims against Wright. *See Sutherland*, 218 P.3d at 715.

¶ 39 Collectively, the court properly refused to enter default judgment against Wright, the SAC superseded the FAC, and Wright was not named in the SAC. The district court did not err.

### C. Attorney Fees

¶ 40 Finally, both Vellone and Wright request appellate attorney fees and costs. C.A.R. 39(a)(2) provides that, "if a judgment is affirmed, costs are taxed against the appellant." And C.A.R 39.1 provides that "[i]f attorney fees are recoverable for the appeal, . . . the party claiming attorney fees must include a specific request . . . and must explain the legal and factual basis for an award of attorney fees."

¶ 41 Vellone and Wright both argue they may recover appellate attorney fees under section 13-17-201(1), C.R.S. 2024 (Except for when a motion to dismiss is treated as one for summary judgment, "where any [tort] action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action."). *See Kreft v. Adolph Coors Co.*, 170 P.3d 854, 859 (Colo. App. 2007) ("An award of attorney fees is mandatory when a trial court dismisses a tort action under

20

C.R.C.P. 12(b). A party who successfully defends a dismissal order is entitled to recover reasonable attorney fees incurred on appeal.") (citations omitted); *see also Patterson v. James*, 2018 COA 173, ¶ 34 ("[S]ection 13-17-201 applies automatically, without regard to whether the claims lacked justification.").

¶ 42 Steven argues that section 13-17-201 does not apply to Wright and Vellone because the district court should have treated the motion to dismiss as one for summary judgment. Because we rejected that argument, we award Wright and Vellone their fees under section 13-17-201(1). *See Kreft,* 170 P.3d at 859; *see also* C.A.R. 39.1. Moreover, because we have affirmed the district court on all claims Steven advanced in this appeal, appellate costs are taxed against him. C.A.R. 39(a)(2). We therefore exercise our discretion under C.A.R. 39.1 to remand the case for the district court to determine a reasonable amount of appellate attorney fees and costs.

## III. Disposition

¶ 43 We affirm the judgment of the district court and remand for the district court to determine Vellone and Wright's reasonable appellate attorney fees and costs.

21

JUDGE LUM and JUDGE BERGER concur.